JAMES D. STEWART et al. v. WILLIAM E. ROSS et al.

1. HUSBAND AND WIFE — CURTESY — ITS REQUISITE. — The estate, by the curtesy at the common law, was dependent upon marriage; seizin of the wife of a freehold of inheritance; birth of issue capable of inheriting; survivorship of the husband.
2. SAME — RIGHTS OF HUSBAND AT COMMON LAW.— Marriage gave the husband the rents, etc., of the wife's lands, and a seizin with her and in her right; these rights lasted during the coverture. The birth of issue made initiate a life estate, which became vested, was subject to alienation and liable for husband's debts. Being vested, no act of the wife could defeat it, but her estate is reversionary, depending on the life estate.
3. SAME — SAME. — The husband must have seizin in his wife's right. If, therefore, the husband does not take actual possession, or have the right of immediate possession, which may be exerted by his voluntary act,

cui tesy does not arise, as if there be a particular freehold estate out-standing, or adverse possession.

4. SAME — SEPARATE ESTATE OF WIFE UNDER STATUTE. — The statutes declaratory of the property rights of married women, so far as they go, emancipate from marital disability and confer legal rights, capacities and powers. The wife may acquire real estate by purchase, devise or inheritance; she has the exclusive right to the income, may lease her lands and improve them. They are not subject to the debts or contracts of the husband, but are liable for her ante nuptial obligations. These incidents and interests of the wife are inconsistent with the conditions of the curtesy estate at common law.

5. CURTESY — ARTICLE 28 OF CODE OF 1857 — HOW DEFEATED. — This statute continues the curtesy estate in "all the lands of which the married woman may die seized or possessed." The right of the husband is made contingent upon the seizin of the wife at the time of her death. The estate does not become absolutely fixed and vested in the husband by the birth of issue. The right only becomes vested when the wife dies seized. It is subject to be defeated by the joint conveyance of husband and wife; by sale under legal process for the wife's debts, and, lastly, by a last will disposing of the estate as allowed by the statute of 1867.

6. SAME — SAME — TO WHAT IT ATTACHES. — Curtesy attaches, under the statute, to all lands not conveyed by the husband and wife, not sold for her debts, nor devised by last will, or in the words of the statute, to the lands of which she died seized.

7. SAME — CASE IN JUDGMENT. — Mrs. R. acquired the lands in question in 1870. She made a will, devising them to her children, and died in 1871: *Held*, that the surviving husband did not take an estate by the curtesy.

APPEAL from the Chancery Court of the First District of Hinds County.    Hon. E. W. CABANISS, Chancellor.

This was a bill filed by Stewart and McCutchen against William E. Ross, Joshua and Thomas Green, D. N. Barrows and Geo. A. Smythe; and also against W. B. Ross, Marion S. Ross and James B. Ross, minors, children of W. E. Ross and Marion S. Ross, deceased.

Stewart owned an interest in a judgment for $6,369, rendered in the circuit court of Hinds, on the 21st day of November, 1867, against W. E. Ross; and McCutchen owns a judgment rendered in said court on the 20th day of May, 1868, against said

W. E. Ross for $731.40, both judgments having been duly enrolled.

1st. The object of the bill was to subject to these judgments in the order in which they are named, an insurance fund in the hands of Barrows and Smythe and J. & T. Green, arising from a loss under a policy of insurance covering the dwelling house on the *land* in controversy.

2d. And also to have certain deeds cancelled, by which the title to the land in controversey was placed in the hands of Mrs. Marion S. Ross, deceased, upon the ground that their conveyances were made to hinder, delay or defraud the creditors of W. E. Ross, and particularly in fraud of the rights of the complainants.

3d. And in the alternative, the bill prayed, in the event that the land was decreed to belong legally and properly to Mrs. Ross, deceased ; then, that the life estate of W. E. Ross in this land, as tenant by the curtesy, be decreed to be sold for the payment of the judgments; and that the will of Mrs. Ross, by which she devised the land to her children, and by which she provided (as contended by respondents) that her husband should not have any estate by the curtesy, or which, in effect, was intended to defeat this estate, should be pronounced void as to the complainants' rights.     *   *   *

The two grounds first stated were abandoned by the complainants.

This leaves but one question in the cause for adjudication, viz. : whether the will of the wife divested the husband of his estate by the curtesy as against the judgment creditors of the latter.

*Frank Johnson*, for appellants, contended :

1. That the estate of Ross in the land, as tenant by the curtesy, was not divested as against his creditors by the last will of his deceased wife. At common law, upon the birth of issue, the husband became tenant by the curtesy initiate, and, upon the happening of this event, the estate assumed the status of property, and became a vested estate in land. At the death of the wife, the estate became consummate.

2. That the curtesy estate was essentially distinct from the life estate of the husband during the marriage; that is, the right of the husband to the income of the wife's lands. This estate depended upon two conditions — a valid marriage and the seizin of the wife; the death of the wife ended this estate. Bishop on Mar. Wom., § 529. When all the conditions exist upon which curtesy depends, then this estate is, upon the death of the wife, a continuation of the estate which terminated by the death of the wife. 2 Kent, 130 ; 1 Atk., 609 ; 1 Bish. Mar. Wom., 473.

3. That curtesy initiate is a vested estate, and is regarded in law as property, as a legal estate, and can be taken, under execution in attachment, for the husband's debts. It is different from dower, in this, that while dower is a mere right in action which may be waived or enforced at the wife's pleasure, and is not, before assignment, strictly speaking an estate in land, curtesy, on the other hand, is an exact and definite one, covering the whole land, and no assignment is necessary. Bishop, § 511. This estate, by the curtesy, is a freehold in remainder for life, dependent on his survivorship, with remainder in fee to the heirs of the wife, and this estate in him is " land," and liable to respond to his debts by execution or attachment. Day v. Cochran, 2 Cush., 274; Lessee of Jas. Canby v. Porter, 12 Ohio, 80 ; Lancaster Co. Bank v. Stauffer, 10 Penn., 398; Mattocks v. Stearns et ux, 9 Ver., 326 ; 2 Washburn's Real Property, p. 167, § 50; 1 Bishop on Mar. Wom., § 511.

And it may be sold by the husband during the life of the wife. Griffin v. Sheffield, 38 Miss., 359 ; 16 Mass., 189 ; 3 Dallas, 488.

And the estate cannot be prevented from vesting by the disclaimer of the husband. Watson v. Watson, 13 Conn., 85; 2 Wash. Real Property, p. 167, § 50.

4. By the code of 1857 (art. 24, p. 336), the income arising from the real estate is taken from the husband and given to the wife. But this does not in any manner affect his estate as *tenant by the curtesy.* For a marriage settlement might have secured this in-

come to her separate use, and still the husband would have been entitled to his life estate at her death by the curtesy. But art. 28, p. 337, saves to the husband his right of curtesy to the "extent allowed by law;" that is to the extent allowed at common law. And art. 29 restricts this estate to one-third of the land if the wife leaves surviving her a child or children of a former marriage or descendants of them. The *marital right* of the husband to the income of the wife's realty during their joint lives is taken away; and where the wife leaves a child or children of a former marriage, the *curtesy* is restricted to one-third of the wife's land.

The rights of the husband are no further affected or changed, and to show that the right to curtesy was not intended to be taken away, art. 28 expressly provides, that "*nothing herein contained shall deprive the husband of his right to curtesy.*"

Thus, under the statute, nothing would defeat the curtesy, that would not have defeated it at common law. And under the statute his right to the estate depended upon the same condition as at common law, viz: marriage; seizin of wife; birth of issue and and survivorship. The power of alienation given to the wife by art. 4, p. 307, and the form of acknowledgment required by art. 33, p. 313, Code, 1857, cannot affect the right of curtesy *except by the husband's consent*, for the lands can only be conveyed by the joint deed of the husband and wife; that is, by his concurrence in the conveyance. These clauses of the statute in no way impaired or changed his right to curtesy as it existed at common law, for at common law he had the right to convey the estate by his own deed; and by the statute his concurrence in the wife's deed would have the same effect, viz: to pass the title to his estate by the curtesy.

The power given by the statute (art. 26), to the wife, of charging her separate estate, cannot affect the husband's curtesy in this case, for the wife died seized and possessed of the land.

5. In Ryan v. Freeman, 36 Miss., 177, it was said that the statute act 1846 contemplated all the conditions upon which the curtesy

depended at common law. And in Malone v. McLaurin, 40 Miss., p. 163, it was held under the law of 1857, the four common law conditions are stated, and the court, *as to the seizin of the wife,* the estate was made to turn entirely upon the question, THERE WAS A SEIZIN DURING COVERTURE.

Thus treating the estate as at common law, and also in Redus v. Hayden, seizin during *coverture,* was made the test. 43 Miss., 635. Thus stood the law in 1857, and under this law upon the birth of issue, the estate vested; and it then became a freehold in remainder for life, dependent upon survivorship with remainder in fee to the heirs of the wife. It was a legal vested estate possessing all the elements of property, and certainly, except where there were children of the wife by a former marriage, as at common law.

This estate could be taken on execution, and was subject to the husband's debts.

6. The act of 1867 provides that a married woman may, without the consent of her husband, dispose of *her* separate estate by last will and testament. This act in so far as it affects the rights of the husband must be strictly construed. His rights will not be construed away by implication. Upon strict construction of this statute, his estate by the curtesy is not affected. The statute would be construed to mean, she could make the devise subject to his estate by the curtesy. But there are other views that are decisive of the proposition that his rights are not affected. This act is in terms an amendment of the prior statutes respecting the same subject matter, and it must, on a familiar principle of construction, be construed, *pari passu,* with the statute of 1857. In other words, it must be regarded *as if it had been in terms contained in the statute of* 1857. It does not purport to be, nor is it a *repeal* of any prior statute, or of any clause in the prior statute, but it is an admendment of the existing statute in reference *to the separate property of married women.* It must therefore be so taken and construed as if it was embodied in the statute of 1857, this would

leave in force the express saving clause in favor of the husband's estate by the curtesy, and this clause would be considered in conjunction with the *amendatory act.* It *must be* considered that the legislature in making the amendment did so in reference to, and subject to this express proviso or reservation as to the husband's estate. But I submit that the sound rule of construction is to consider together all the various statutes in reference to this subject, in order to see intelligently what changes were designed to be made. When the various statutes were consolidated in the Code of 1871, both the statute of 1867 and the proviso in the law of 1857, were brought forward and reënacted. Sec. 1785, Code 1871, gives the wife the power to make a will, and sec. 1786 expressly provides that nothing contained in the statute should deprive the husband of his right of curtesy to the extent allowed by *law.* This is a legislative construction of the two former statutes. Properly construed, there was *nothing* inconsistent between the law of 1857 and the amendment of 1867, and in proof of this, the two provisions are incorporated side by side in the Code of 1871. This general rule of construction was followed in Apple v. Ganoug, 47 Miss., 199.

*It is clear that the devisees of Mrs. Ross, deceased, took the fee simple in the lands subject to the life estate by the curtesy of the husband.* It is certain that the disclaimer of the husband could not prevent this estate vesting in him. Watson v. Watson, 13 Conn., 85 ; 2 Wash. Real Prop., 167, § 50. His conveyance of this estate, or formal release after the estate had become consummate by the death of the wife, would not have been good against the liens of judgment creditors.

*Shelton & Shelton,* for appellees, insisted :

1. That the curtesy of the husband at *common law* was essentially different from what it is under our *statute.* By the *common law* the husband is jointly seized with the wife, and has a freehold estate. 1 Wash. on Real Estate, p. 140, sec. 47 ; pp. 141, 276, sec. 2. By the *statute* it remains hers as fully as if she were un-

married.    Code of 1857, p. 335, art. 23.    By the *common law* curtesy before the wife's death as well as after her death, is liable for the husband's debts.    1 Wash. on Real Estate, p. 141, sec. 51. By the *statute* her land shall not be subject or liable for his debts or incumbered by lien.    Code of 1857, p. 335, art. 23.    By the *common law* the husband during the wife's life, may sell his estate by curtesy, and deliver possession of the property to his vendee.    1 Wash. on R. E., p. 137, sec. 31.    By the *statute* he can neither sell, convey, mortgage, or in any manner incumber the property without the wife's consent.    Code 1857, art. 23.    By the *common law* the husband alone is entitled to the rents and profits during coverture, and if rents are due when the husband dies, they go to his administrator and not to the wife.    1 Wash. on R. E., p. 276, sec. 2.    By the *statute* they enure to the wife as her separate property, and are not liable for the husband's debts, and if he buys property with them in his own name, he holds it as trustee for the wife.    Code of 1857, p. 36, sec. 24.    The common law gave everything to the husband but the fee.    The statute reserves the use and fee to the wife.    The reserved curtesy is personal to the husband for the benefit of himself and children, and beyond the use of it for himself and children the husband has no more power over the *estate* than he had before the death of the wife.

2.    That curtesy at common law was an estate of *inheritance* and not by *purchase.*    " It is part of the inheritance and is not by purchase ; a part of the wife's estate continuing the inheritance to the children through the father as an intermediate for the family benefits.    Hence the common law necessity for the husbsnd and wife's joint seizin during coverture, for without which he could not enter under her estate."    1 Wash. on Real Estate, 140, sec. 44, p. 141, sec. 50 ; 2 Crab on Real Property, 119 ; 2 S. & M., ch. 249 ; 1 Roper on H. & W., 35 ; 2 Atk., 247 ; 1 Wash on R. E, p. 159, secs. 23 and 30, p. 501, sec. 61 ; 13 Conn., 33 ; 3 Atk., 697.    The rule as to what constitutes seizin has been relaxed.    9 B. Monroe, 39 ; 13 ib., 467 ; 15 ib., 591 ; ib., (Ky.), 000 ; 3 Hill, 186 ; 5

Case, p. 98 (N. Y.); 23 Mo., 115; 25 ib., 349; 40 Miss., 163. These authorities decide that curtesy is *inheritance* and not *purchase*, and hence it follows that curtesy like any other inheritance can and will be defeated by a valid will, or the valid exercise of any other power to dispose of property.   1 Wash. on R. E., p. 128; sec. 2, p. 152, secs. 9 and 10, etc.; 1 Pr. Williams, 109; 5 Modd. R., 410; 7 Rh. Island, 383; 24 Barb., 581 (N. Y.); 9 Barb. (N. Y.), 360; 28 Barb. R., pp. 343, 378.

3. That the wife has the power to dispose of her separate property.   The act of 1867, p. 725, declares "that a married woman may, without the consent of her husband, dispose of her separate estate by last will and testament."

4. That Ross, as executor, under the will of his wife, being in possession of the property, and conducting it for the purposes of the will and as executor, and in his name, as executor, having insured the dwelling house thereon for the benefit of the estate, the policy of insurance can not be subjected to the payment of Ross' debts as husband.

*G. L. Potter*, on same side :

The question presented for decision, arises under the woman's law of the Code of 1857, *as amended* by the act of 1867.   The property of Mrs. Ross was acquired and her will was made under this amendment.

The Code act declared that nothing therein should "deprive the husband of his right of curtesy to the extent allowed by law;" but it expressly limited this right to lands of which the wife should "*die* seized or possessed."   It gave to the wife the exclusive possession and use of her estate during the coverture, and left the interest of the husband contingent upon his survivorship and her dying seized.   It seems a misnomer to call such a dependent interest, which can be a mere possibility during the coverture, a "right of curtesy."   Doubtless the word "curtesy" was retained to indicate that this new right of the husband was further dependent, like the old right of curtesy, on the birth of issue capable of inheriting.

The Code of 1857 not only gave to the wife the exclusive pos-session and usufruct, but it also enabled her to enter into a class of contracts without consent of her husband and without limit of amount, and these might be enforced by legal process, and her whole estate might be sold to pay them ; and thus this alleged " vested estate " of the husband might be sold away, under pro-cess upon the separate contracts of the wife. It is impossible to imagine a thing more unlike the old common law curtesy interest of the husband, than is this contingent privilege of survivorship secured to him by the Code of 1857.

But by that Code the wife could not directly *convey* her lands except by joint deed of herself and husband. To this extent, he might protect his contingent right of survivorship by refusing to join her in a conveyance of her estate ; but the act of 1867 *en-larged* her power of disposal, and gave her the right to "dispose of her separate estate by last will and testament, without the con-sent of her husband." These last words clearly indicate that in thus devising her estate, the wife is to act as a *feme sole ;* and they further show the intent to subject to such will of the wife, any contingent interest the husband may have in her estate.

Under a similar statute of New York, pamphlet acts, 1849, p. 528, it was held that the power given to the wife to convey or de-vise her separate estate would, if exerted as allowed by the statute, exclude all claim of the husband. Ransom v. Nichols, 22 N. Y., 111–12 ; Hurd v. Cass, 9 Barb., 368–70 ; Sleight v. Read, 18 Barb., 164. The court likened it to the case of a trust estate held for the use of the wife, with a power in her to dispose of the same by her *appointment.* If she makes no appointment, the surviving husband takes his curtesy ; but if she exercises the power, he is excluded. Clark v. Clark, 24 Barb., 582.

It has been urged that under the Code of 1857, the husband had, during the marriage, a vested interest — a right of property to be enjoyed in future, and contingent only upon his survivor-ship. If this was true, the law of this case would still be with

the appellees, for the act of 1867 interposes another contingency; the wife must not only die seized, but she must also die *intestate* as to the estate, or the husband is excluded. But under that code, the husband could have no such vested estate during the coverture. If such an interest existed then, like all such vested rights, it might be conveyed by the husband, and it might be subjected to pay his debts; but the Code of 1857 expressly forbade this; p. 335, § 23. As we have shown, this so-called "vested right" of the husband might also be divested upon the simple contracts of the wife. The law knows of no such mode of divesting a vested estate by the act of a third party. The fact that, in the matter of her separate estate, the wife might so contract against the will of her husband, as to cause the entire destruction of her estate, gave significance to the provision which restricted the claim of the husband to cases where the wife should "die seized or possessed."

By the common law, the husband, immediately upon the marriage, had a joint seizin with the wife of all lands of which she was seized in fee, and he was entitled to the rents and profits during the marriage, but this right was so far inchoate, before birth of issue capable to inherit, that it was liable to be defeated by her act forfeiting the inheritance, such as treason. 1 Washb. Real Prop., 312–13 (276); Pender v. Dicken, 27 Miss., 255.

The interest of the husband as tenant by the curtesy *initiate* in the lands of his wife, was "a freehold estate," and might be sold under execution. Day v. Cochran, 24 Miss., 273–4. But all this was changed by the Code of 1857, whereby the interest of the husband, like the dower interest of the wife, became *contingent* — dependent both upon survivorship and the dying seized, by the husband or wife, as the case might be.

Being thus contingent, and not vested, a change in the law during the coverture would defeat the claim of husband as well as wife. Magee v. Young, 40 Miss., 164.

Under the New York law before referred to, the wife had, during the coverture, both the exclusive possession and the separate

usufruct of her estate, and therefore it was held to be legally impossible for the husband to acquire an estate by curtesy in it. The logic of the decision is conclusive against any like pretense in this case.    Billings v. Baker, 28 Barb., 347–50 ; ib., 365–70.

There being nothing " vested " in the husband during coverture, it is vain to talk about "carving " an imaginary estate, as was attempted in Knott v. Lyon.

It is vain to urge that the act of 1867 does not extend to the contingent claim of the husband.    It empowers the wife to " dispose of her *separate estate*" — meaning *the whole* estate.    The Code of 1857 employs the words, " separate property," " separate estate," interchangeably to describe the whole estate of the wife. p. 335–36, §§ 23–4–5.

It is also vain to insist that the claim of the husband attached upon the estate at the instant the wife died, and that therefore her will is inoperative.    That sort of logic, if allowed, would defeat all devisees.

SIMRALL, J., delivered the opinion of the court.

So much of the original bill as sought a cancellation of the conveyances which vested the property in Mrs. Ross has been abandoned, and the controversy on the part of the appellants, judgment creditors of W. E. Ross, is limited to an effort to establish a life estate in him to the land as tenant by the curtesy, and to subject that to their judgments.

The novel and important question has been ably argued by counsel, whether, under existing statutes, W. E. Ross took an estate by curtesy in the lands?

Mrs. Ross acquired the lands, by purchase and conveyance, in 1870.    She died in 1871, having made a last will and testament, by which she devised the lands to her children, issue of her marriage with W. E. Ross.    The husband was made executor, and entrusted with the control of the property, and the use of its revenues for the support and education of the children, and the maintenance of himself during life.

There was marriage, seizin by the wife of a freehold of inheritence, birth of issue capable of inheriting, and survivorship by the husband. So that there was a concurrence of all the common law incidents to make this estate complete and consummate. Marriage conferred upon the husband the right to the rents, issues and profits of his wife's real estate during the coverture. He became seized *jure uxoris* with her of her freehold estates, with the possession and pernancy of the issues and profits.

The birth of issue, capable of inheriting, advanced the husband's rights still further, and enlarged his title into a life estate, which initiates from that moment, and becomes a vested estate, capable of being alienated, or subjected to his debts. There is not a feature of contingency about it. It begins or becomes initiate on the birth of issue, and continues so long as the husband lives. It is well settled in the law, that from the time this life estate vests, it becomes inseparable from the inheritance, and cannot be restrained or prevented by the act of the wife or any other person. Greenleaf Cruse, title, Curtesy, 153, § 17; Paine's Case, 8 Rep., 34; 1 Hill on Real Estate, 79, 322. In this particular, it is like dower. By marriage and seizin of the husband, the right became fixed in the wife, and could not be cut off or defeated by any act of the husband. Neither can the wife, when curtesy is vested by marriage, seizin and birth of issue destroy the husband's estate. The birth of the issue, at any time during the coverture, constitutes the husband tenant by the curtesy, and is such title as he may stand upon in the action of ejectment. Jackson v. Johnson, 5 Cow., 95. In Ellsworth v. Cook, 8 Paige, 643, the application was to subject this estate to the husband's debts; it was held that this initiate estate continued during the whole period of his life, if he survived his wife, and could be reached by creditors. The interest of the wife must be such, that the husband may have seizin in her right. Bacon Ari., title, Curtesy. If there be an outstanding particular freehold estate, which does not fall into the inheritance during coverture, there is

not such a seizin and right of immediate possession as will support the estate of curtesy. Redus v. Hayden, 43 Miss., 633–6 ; Malone v. McLaurin, 40 Miss., 162. The seizin must be accompanied with possession, or the right of immediate possession, and such entry could be made by the voluntary act of husband. Ib. Tenant, by the curtesy initiate, is seized of a freehold estate in his own right, and the interest of his wife is a mere reversionary interest, depending on the life estate of the husband. Foster v. Marshall, 2 Fos., N. H., 491, 493 ; Matlock v. Stearns, 9 Vt., 327, 335. Marriage gives to the husband a freehold interest during the joint lives of himself and wife, and husband and wife are seized in right of the wife. Co. Litt, 67 a ; ib., 351.

Let us now turn to the statutes in force at the time Mrs. Ross acquired the property and made her will, and see what alterations have been made in the common law, and how the rights of parties have been affected thereby.

These statutes, declaring the property rights and powers of married women, were designed as far as they go, to emancipate the wife from marital disability, and confer upon her *legal* rights, capacities and powers. Hence, they confer the capacity to acquire and hold legal estates, to bind and make them liable by *legal* contracts. The character of their estates, and the extent of the innovation upon the common law will be more clearly dis cerned by a reference to the statutes themselves :

"Every species and description of property, whether real or personal    *    *    *    which may be owned by or belong to any single woman, shall continue to be the separate property of such woman as fully after marriage as it was before." The same character is impressed upon after acquired property, with a com-plete right to acquire it. Such property shall not be liable to the debts of the husband, nor shall it be sold, conveyed or in any manner incumbered by the husband unless the wife join in the conveyance. Art. 32, pp. 335, 6, Code, 1857. The rents and income shall inure to the wife as separate property, and shall not

be liable for the husband's debts. ' She may invest her means in purchasing property ; and should the husband use her money to buy in his own name, he is declared to be her trustee. Art. 24. She may rent her lands, and make any contract for the use thereof. Her property is liable for all the debts she may incur, under the 25th art., including her ante nuptial contracts, and satisfaction may be had out of it. The husband is not liable for her ante nuptial debts, nor for her debts after marriage if she hold separate property under the act.

The 28th article is, "if the married woman shall die seized or possessed of real estate acquired or held under this act, nothing herein contained shall deprive the husband of his right of curtesy to the extent allowed by law."

It admits of most grave and serious doubt, whether, aside from the 28th article, the curtesy estate had not been entirely abolished by the anterior provisions of the statute ; abolished not by express words, but by conferring such powers and rights, as incidents of the wife's tenure of her real estate, as entirely swept away the essential foundations upon which this estate rested. The estate arises by operation of law out of the circumstances, and upon the conditions already named. Under the statute the husband has no seizin, *jure uxoris*, or jointly with her. He cannot receive or appropriate the rents; he cannot make a lease ; he has no possession *sui juris*. Neither the land itself, nor its income, can be taken by creditors. But, on the contrary, he or his representatives may be called to an account by the wife or her representatives, for the rents, profits and income of her separate property. (Art. 28, last clause.)

The birth of issue in no wise affects the wife's estate, or advances the husband's rights. The statute strips him of every interest, present and prospective, which marriage gave him at the common law. But her real estate shall not be subject to his debts, but satisfaction may be had out of her real estate for her debts incurred before and after the marriage. The land may be

sold under legal process, and thus destroy the initiate estate, which, it is said, is vested in the husband.

The 28th section must be so construed as to bring all the several parts of the statute into a harmonious system, and thereby to carry out the plan and purposes of the legislation.

The central idea in the scheme is, that the husband shall not take and enjoy the real estate of the wife, nor its rents, as allowed by the common law, nor shall marriage give him her personal property. Since he has been deprived of these marital rights, he shall not be responsible for her debts contracted before or after marriage. Though the wife may take the income and make leases, yet she shall not sell and convey or mortgage without the husband's consent.

The 28th section is careful in the use of language. It is, " if the wife shall die seized or possessed of lands," etc. It confines the husband's curtesy to the lands of which the wife *died seized.* If they have been conveyed away by deed of husband and wife; if they have been sold under legal process for the wife's debts, then the right of the husband does not arise.

To put the legislative intent in the abstract, it might be thus expressed. If the real estate has not been disposed of in any mode allowed by law, then the husband shall have curtesy. That thought is embraced in the words, " died seized or possessed."

By the act of 19th February, 1867, the legislature took another step towards the enlargement of the capacities of married women. Its title is, " To amend the law, heretofore in force, respecting the property rights of women." The first section is, " that hereafter a married woman may, without the consent of her husband, dispose of her separate estate by last will and testament * * * unless the contract of marriage entered into before or at the time of marriage, or by the terms of the conveyance, devise or bequests under which she acquires and holds the same, the power so to dispose of her separate estate shall be expressly, or by plain implication, excluded." The language conferring the power is

broad, general and absolute, subject to a restriction which would apply, without being named, equally to persons not under disability.

The intent is plain, since the wife already has the power to possess, control and enjoy her property during coverture exclusively, may charge it with debt, and with the consent of the husband, sell or incumber it. She shall have the additional power and discretion to dispose of it by will; nor shall there be any restriction upon the right unless imposed by the instrument under which she holds.

We would interpret the statute as conferring the capacity to alienate by devise, and as enabling her by will to change the destination which the real estate, of which she died seized or possessed, would otherwise have. Construing all the statutes of *pari materia*, together, so that each several provision may have effect, the 28th art. of the statute of 1857, as modified by the act of 1867, retains to the husband a curtesy in the real estate of his wife, which has not been alienated by their joint conveyance, which has not been sold by creditors of the wife under legal process, which have not been devised by the wife. This construction would leave the husband's right to take effect on all the lands of which the wife " died seized," and would fully satisfy the words of the law. At the same time it would subserve what would seem to be the manifest intent of the law maker. There is close analogy between the dower and curtesy estates, as regulated by statute. Dower is confined to real property, of which the husband died " seized and possessed," and to lands not conveyed for a valuable consideration and in good faith, by the husband, without the wife's relinquishment. At common law, the right to dower became initiate on the seizin of the husband, and could not be divested by any act done or suffered by him. By statute it is limited to lands whereof the husband had seizin at his death, and to those alienated without valuable consideration. The husband may cut off the contingent right by such alienation. The statute

makes dower contingent, so does it the estate by the curtesy. The husband is enabled to alienate, for value, and defeat dower. The wife may charge her separate estate with debts, and thus indirectly make creditors to cut off curtesy ; so she may devise it and thereby defeat it.

As we interpret the statutes, the right of the husband does not become initiate of a life estate on the birth of issue, in the sense of being fixed and vested, but it is contingent to take effect on the death of the wife in all the lands of which she died seized or possessed, that is, not disposed of during coverture, and not devised by will.

This view is supported by the analogies of the law.    An estate conveyed in trust, to permit the wife to receive and enjoy the rents and issues, with a power of disposition of the property by will, is such an equitable estate, as that the curtesy of the husband may attach, if the wife dies without making an appointment. But if she makes a will, the husband shall not have curtesy. Morgan v. Morgan, 4 Gill & J., 395.    But if the intention is clearly manifested that he shall be excluded from the curtesy, he shall not take.    Bennet v. Davis, 2 P. Wm., 316.    See also Follett v. Tyrer, 14 Sim., 125.    The mere fact that the wife shall have exclusively the income of an equitable estate of inheritance does not exclude the husband from curtesy.

If the instrument which creates the equitable estate, in the wife, gives her the power of appointment by deed or last will, and she executes the power, the husband's right is cut off.    If she does not, it attaches.    This doctrine, well supported by authority in courts of equity, is in effect, the result attained by the statutes. It was said by the court in Bank of La. v. Williams, 46 Miss., 632, " that a married woman (unless the instrument creating her estate otherwise provides) holds her property, whether owned at her marriage or acquired since, as if the 23d, 24th, 25th, 26th and 27th articles of the Code, pp. 335–6 were embodied in the instrument conferring the property opon her."    The statute impresses itself

as conditions of her tenure; defines the terms by which she holds, and her power over the property. If land be conveyed to a married woman in 1870, we must consult the law then in force, to determine the extent of her power to charge, and dispose of it. If at that time and at the date of the death of Mrs Ross, in 1871, the statute declared that she might at her discretion without her husband's consent, devise her land, then that power was annexed to her title and estate, quite as completely as if it had been conferred by the deed under which she acquired it. If she exerted the power in such wise, as to create an interest in her devisee, incompatible with a curtesy in the husband, that estate never arose. The absolute power of disposition conferred by the statute of 1867, is inconsistent with a vested initiate tenancy by the curtesy. That estate, under these statutes, has lost its vested feature on the birth of issue, and becomes contingent, on the event of the wife's dying intestate, without having the seizin and title pass from her in her lifetime, and without disposition by last will.

These views are in the main sustained by the case of Billings v. Baker, 28 Barb., 344–376. The third section of the New York statute of 1849 is like ours; except that it confers upon the married woman power to " convey " as well as devise, and does not in express words retain the curtesy estate. It was held, that the effect of the statute was to abolish that estate altogether. The 28th article of the Code of 1857 still preserves it, contingently, however, as we have seen.

The case in 28 Barb. went further than the prior adjudications, in holding that the statute abolished curtesy, although the wife had not made a " conveyance " or ",devise." It was well settled that if she did " convey " or " devise," curtesy was cut off. Hurd v. Cass, 9 Barb., 366 ; Clark v. Clark, 24 Barb., 582–3. Our statute allows curtesy if the wife has not made a " devise " or her seizin has not otherwise been lost, by some voluntary act, or act suffered by her, so that she did not die seized of the property.

It follows that W. E. Ross is not tenant by the curtesy.

The decree of the chancery court is affirmed.