IRA MILLER, ADMINISTRATOR, APPELLEE, v. THOMAS W. HANNA, APPELLANT.

FILED MAY 6, 1911. No. 16,442.

1. **Descent and Distribution:** CURTESY: LIABILITY OF LAND FOR DEBTS. By the provisions of section 29, ch. 23, Comp. St. 1887, the lands of which a married woman died seized descended to her surviving husband as a tenant by curtesy subject to sale for the payment of her debts.

2. **Executors and Administrators: SALE OF LAND TO PAY DEBTS.** The proceeding to sell the land of a deceased person for the payment of his debts as provided by sec. 67 et seq., ch. 23, Comp. St. 1909, is special and partakes of the nature of a proceeding in rem.

3. ———: ———. Where it is made to appear to the judge of the district court that the order authorizing the sale does not comply with the provisions of the statute, and is void for any reason, it is his duty to refuse to confirm the sale made thereunder.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed.*

*F. A. Boehmer* and *I. P. Hewitt,* for appellant.

*Burkett, Wilson & Brown, contra.*

BARNES, J.

This is an appeal from an order of the district court for Lancaster county confirming an administrator's sale of the interest of a remainderman in 160 acres of land situated in Dawson county.

It appears that in the month of April, 1907, one Jennie E. Miller departed this life in Lancaster county, Nebraska, intestate and without issue, leaving surviving her a husband and her father, one Thomas W. Hanna. Deceased left no debts, except the expenses incurred during her last illness and for her burial. At the time of her death she was the owner in fee in her own right of 160 acres of land situated in Dawson county, Nebraska. On the 5th day of December, 1907, Ira Miller, who was her husband, was by the order of the county court of Lancaster county appointed administrator of her estate. Subsequent to his appointment he procured an order of the county court allowing him $597 as a claim against the estate of his deceased wife on account of the debts above mentioned. On the 3d day of August, 1908, the administrator commenced an action in the district court for Lancaster county to obtain a license to sell the Dawson county land for the payment of his claim against the estate of his de-

18

ceased wife. An order for the sale of the land in question was made, by which it was provided that it should be sold subject to the life estate of the surviving husband. The land was advertised for sale, and the interest in remainder of the father of the deceased was offered for sale and sold for the sum of $600. When application was made to confirm the sale, appellant, who had no notice of the proceeding until after the order of sale was made, filed objections, which were overruled, the sale was confirmed, and he presents the record to this court for a reversal of the order of confirmation.

Appellant's first contention is that the husband is primarily liable for the expenses of the last illness and burial of his wife, and, until an execution against him is returned unsatisfied, no claim of that nature can be allowed against her estate. That question seems to have been foreclosed by the order of the county court. That court has original jurisdiction in the matter of the settlement and allowance of claims against the estates of deceased persons; and, where no appeal is taken from the order of that court, such order is, ordinarily, binding and conclusive upon all persons interested in the estate, and cannot be collaterally attacked.

It is next contended that the estate which the appellee took in the land belonging to his wife at the time of her death is liable for her debts, and that the order of the district judge for the sale of her land, subject to the life estate of the husband, for the payment of her debts is void, and may be attacked on a motion to confirm the sale, and therefore the order of confirmation should be reversed. On the other hand, it is contended that the appellee took an estate by curtesy in the lands of which his wife was seized at the time of her death which is not liable for her debts. Considering this to have been the rule at the common law, it seems clear that this rule has been greatly modified by our statutes. Section 1, ch. 53, Comp. St. 1909, provides: "The property, real and personal, which any woman in this state may own at the time of her mar-

riage, and the rents, issues, profits, or proceeds thereof, and any real, personal, or mixed property, which shall come to her by descent, devise or the gift of any person except her husband, or which she shall acquire by purchase or otherwise, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband, or liable for his debts." The statute in force at the time of the death of the intestate provides that, when any married women, seized in her own right of any estate of inheritance in lands, shall die leaving no issue, the lands shall descend to her surviving husband during his natural lifetime as tenant by curtesy, and, after his decease, to her father. Section 30, ch. 23, Comp. St. 1887, by which this proceeding is to be governed, provides, among other things: "When any person shall die seized of any lands, tenements or hereditaments, or of any right thereto, or entitled to any interest therein in fee simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, in the manner following."

Under statutes very similar in their provisions to the sections of our law above quoted, the courts of several of our sister states have held that the estate which the husband takes in the lands of the wife at the time of her death is subject to her debts. *Arrowsmith v. Arrowsmith,* 8 Hun (N. Y.) 606, was a case where all the land of the wife was sold to pay her debts. The court there said: "The respondent (meaning the husband), however, took such estate subject to the payment of the debts of his wife. During her life the property was absolutely hers, and she was entitled to receive the rents and profits thereof to her own use, and all debts by her contracted became a charge upon her property, as much as if she had been in fact an unmarried woman." In *Bennett v. Camp,* 54 Vt. 36, the court said: "But the right to occupy as tenant by the curtesy, like inheritance by an heir in real estate, is subject to be defeated to the whole or a part of the estate, by the necessity of a sale of so much as may be

required to pay the debts and expenses of administration, which cannot be discharged from the personal estate of the intestate." It appears that Mississippi had a. statute, prior to the abolition of dower and curtesy in that state, that provided for an estate as a tenant by curtesy in all lands of which a married woman should die seized or possessed, and the supreme court of that state in *Stewart v. Ross*, 50 Miss. 776, said: "The right of the husband * * * becomes vested when the wife dies seized. It is subject to be defeated by the joint conveyance of husband and wife, by sale under legal process for the wife's debts, and, lastly, by a last will disposing of the estate as allowed by the statute of 1867. Curtesy attaches, under the statute, to all lands not conveyed by the husband and wife, not sold for her debts, nor devised by last will, or, in the words of the statute, to the lands of which she died seized."

Considering the provisions of our statutes in the light of the foregoing decisions, we conclude that the estate which descended to the appellee at the time of the death of his wife is liable for her debts, and that he took only a life estate in the residue of her lands which would remain after the payment of the debts and expenses which have been allowed against her estate. It follows that the judge of the district court had no power to make the order complained of, because the effect of that order was to deprive the remainderman of all interest in the estate, and declare that the life estate of the husband was not subject to the payment of the debts of his deceased wife.

It is contended, however, that the validity of the order cannot be questioned on the motion to confirm the sale, and if the sale was regularly conducted the court could not refuse the order of confirmation. We do not so understand this question. The proceeding to sell the land of a deceased person for the payment of his debts is a special one, and jurisdiction to make the order is conferred by statute upon the district judge in contradistinction from the district court. The statutes provide that upon the

filing of a petition by the administrator for a license to sell real estate for the purpose of paying the debts of a deceased person, the judge of the district court shall make an order directing all persons interested in the estate to appear before him at a time and place therein to be specified, not less than six weeks and not more than ten weeks from the time of making such order, and show cause why a license should not be granted. It is further provided that the judge of the district court at the time and place appointed in such order, or at such other time as the hearing shall be adjourned to, upon proof of due service, or publication of a copy of the order, or upon filing consent in writing to such sale by all persons interested, shall proceed to the hearing of the petition, and, if consent is not filed, shall hear and examine the allegations and proofs of the petitioner and all persons interested in the estate; that, if it shall appear that it is necessary to sell a part of the real estate, etc., the court may authorize the sale; that the administrator shall give bond to the judge of the district court, and that the judge of the district court may require a further bond from the executor or administrator when he shall deem it necessary. Finally, it is provided that the executor or administrator making any such sale shall make a return of his proceedings to the judge of the district court granting the sale. If it shall appear to the district judge that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property, etc., he shall make an order confirming the sale. It thus appears that, from the time the petition is filed to the final confirmation of the sale, the whole transaction partakes of the nature of a proceeding *in rem,* and so long as anything remains to be done by the judge of the district court, upon whom special jurisdiction to conduct the proceeding is conferred, he has full power to make any proper or necessary order therein, and if he discovers that a mistake has been made, and that his order does not accord with the authority conferred upon him by statute, he may

correct the proceedings, and until such correction is made he should refuse to confirm the sale. *Prudential Real Estate Co. v. Hall,* 79 Neb. 808.

In this case it appears that the interest of the remainderman in the entire 160 acres of land was extinguished for a sum insufficient to pay the claim in question and the costs of conducting the suit. The property, as it was exposed for sale under the order complained of, could not have been expected to bring an amount at all commensurate with its value, and the sale, as conducted, amounts to a fraud upon the rights of the remainderman. The order of the district judge should have directed the administrator to sell the land in question, or so much thereof as should be found necessary to pay the administrator's claim, and a sale so conducted would, under present values, have taken only a small portion of the quarter section, leaving the life estate of the husband and the estate in remainder of the father of the decedent as to the remainder of the land intact for the benefit of both of them. We are therefore of opinion that the judge of the district court should have refused to confirm the sale in question.

The order of the district court is therefore reversed and the cause is remanded for further proceedings.

REVERSED.