McCormick v. Brown.

---

WILLIAM McCORMICK, APPELLEE, v. ALICE A. BROWN ET AL., APPELLEES; WILLIAM WILSON, INTERVENER, APPELLANT.

FILED JANUARY 2, 1915. No. 17,925.

1. **Fraudulent Conveyances: HOMESTEAD.** The homestead of a debtor and his family is not subject to the claims of his creditors, and fraud cannot be predicated upon the transfer of the homestead interest by the debtor to his wife.

2. **Husband and Wife: WIFE'S INTEREST IN HUSBAND'S REALTY: LIABILITY FOR HUSBAND'S DEBTS.** Under the act of 1907 (laws 1907,

97Neb.35

ch. 49, Rev. St. 1913, secs. 1265-1272), a wife has an interest in
the real estate of her husband which he cannot alienate without
her consent, and is not subject to his debts.

3. **Fradulent Conveyances:** HUSBAND AND WIFE: HOMESTEAD.  If the
title to the homestead property is in the husband, and it is sold
and conveyed by husband and wife for more than the $2,000
homestead exemption, upon the husband's agreement with his
creditors to pay them out of the proceeds thereof, the fact that
he transfers to his wife the amount of the homestead exemption,
and of her interest under the statute in the remainder, is not a
fraud against his creditors of which they can complain.

4. ————: ————: RIGHTS OF HUSBAND'S CREDITORS.  In such case,
if the husband fails to pay his creditors out of the proceeds of the
sale, without the knowledge of the wife that he intends to or does
so fail, it will not amount to fraud on the part of the wife, so as
to subject her interests in the proceeds of the sale to the claims
of the husband's creditors.

5. **Husband and Wife:** RIGHTS OF WIFE: LIABILITY FOR HUSBAND'S
DEBTS.  If, in such case, the wife in good faith repurchases the
property with her shares of the proceeds of the sale, and the pro-
ceeds of a loan which she procures on the property, her title will
not be subject to the claims of her husband's creditors.

APPEAL from the district court for Lancaster county:
P. JAMES COSGRAVE, JUDGE.  *Affirmed.*

*Stewart, Williams & Brown,* for appellant.

*Burkett, Wilson & Brown* and *Tibbets & Anderson,* con-
tra.

SEDGWICK, J.

In November, 1910, the defendant John J. Brown held
the title to about 20 acres of land near the corporate lim-
its of the city of Lincoln, and he and his wife, the defend-
ant Alice A. Brown, had lived upon the land as their home-
stead.  At that time he sold the land to William J. Bryan
for the consideration of $8,750.  This consideration was
paid $5,000 in cash, and two promissory notes of Mr.
Bryan, one for $2,258.62 and the other for $1,491.38.  Af-
terwards Mr. Bryan reconveyed the land to Mr. Brown,
who immediately conveyed to the defendant, Alice A.
Brown.  The plaintiff, William McCormick, began this ac-

tion in the district court for Lancaster county against these defendants, Alice A. Brown and John J. Brown, in which action Mr. William Wilson intervened. The intervener alleged that in March, 1910, he loaned to the defendant John J. Brown $800, and took his promissory note therefor, due in six months, and that the title to the land was taken in the defendant Alice A. Brown to defraud the creditors of her husband, John J. Brown, and particularly this intervener. The issue between the plaintiff and the defendant Alice A. Brown was adjusted, and trial was had upon the petition of the intervener. The trial court found the issues in favor of the defendant Alice A. Brown, and entered a decree quieting her title. The intervener has appealed.

The defendant John J. Brown made no appearance in the action. It appears from the evidence that, at about the time of the sale and conveyance of the land to Mr. Bryan, the defendant John J. Brown, who was in some kind of business in the city of Lincoln, had failed, and his wife was aware that he was having difficulty with his creditors, so that she must have known that if he transferred to her property which was liable for his indebtedness it would operate to hinder and delay his creditors. We think, therefore, the question in this case is whether Mr. Brown did transfer to his wife property which in his hands would have been subject to the claims of his creditors. Mrs. Brown was a witness in her own behalf, and appears to have answered all questions on the direct and cross-examination without hesitation or evasion. Her knowledge in regard to the terms of some of the transactions was not as complete and accurate as we would expect in the case of an ordinary business man, but the trial court appears to have relied upon her testimony in regard to those matters that were within her knowledge, and we have observed nothing in the record that requires us to find that the court was not justified in so doing. She testified that she was married to the defendant John J. Brown something more than a year before the sale of the land to Mr. Bryan, and that at the time of her marriage her father gave her $1,000,

which was mostly expended in furniture and household articles for their home. Afterwards her father procured insurance for them on the house and furniture, amounting altogether to $3,000. The property was destroyed by fire and the insurance was paid. She says that she received $1,900 of the insurance money. There is considerable discussion in the brief as to her right to the $1,900. Mrs. Brown testified that there were two policies of insurance. She thought one of them was upon her house and the other upon the furniture and household goods, but she was not certain about this. It appears that the house and a considerable part of the furniture were included in one policy, as the property of Mr. Brown. We do not regard this as of controlling importance in the case. The real question is how much of the property really belonged to Mrs. Brown. The fact that, in making out the policy, a transaction in which she took no part, some of the household furniture that belonged to Mrs. Brown was included in the policy upon the house does not appear, under the circumstances in this case, to be inconsistent with the testimony of Mrs. Brown as to the ownership of the property. She testifies that when the property was sold to Mr. Bryan she understood from Mr. Brown that he was selling it for something over $14,000, and that Mr. Brown promised her $6,000 of the money as her "dower interest" in the property. As a matter of fact, he never gave her any of the money at all, but he transferred to her immediately after the sale of the property Mr. Bryan's promissory note, $2,258.62. She repurchased the property from Mr. Bryan. Mr. Bryan, knowing that there was some question raised as to the good faith of Mr. Brown in these transactions, declined to convey the property directly to Mrs. Brown, and insisted on returning it, at her request, to Mr. Brown from whom he received the title. This was done, and Mr. Brown immediately transferred it to Mrs. Brown. She did all of the negotiating with Mr. Bryan for a return of the property. Mr. Bryan, at her solicitation, consented to return the property for the amount that he had paid for it, with interest thereon at 6 per cent. per annum, amounting at the time to

$9,071.32. Mrs. Brown procured a loan upon the prop-
erty in the sum of $4,897.80. She testified that she paid
Mr. Bryan for the property by returning to him the note,
$2,258.62, and giving him the check, the proceeds of the
loan, $4,897.80, and a payment in cash, $1,914.90. This
cash item was the amount that she had received in the set-
tlement with the insurance companies. The intervener
testified that Mr. Brown promised to pay his claim out of
the proceeds of the sale to Mr. Bryan, but failed to do so.
It appears that Mrs. Brown was not aware that he had
failed to make such payment when she repurchased the
property from Mr. Bryan. No fraud can be predicated on
the conveyance to Mrs. Brown of the homestead interest
of $2,000 in this property. Under the act of 1907 (laws
1907, ch. 49), which is now secs. 1265-1272, Rev. St. 1913,
Mrs. Brown was entitled to a one-half interest in the real
estate of her husband, which he could not will or convey
away from her. *Gaster v. Estate of Gaster,* 92 Neb. 6.

The evidence indicates that the land was worth more
than the amount that it was sold for to Mr. Bryan; but if
we consider its value to have been $8,750, and deduct the
$2,000 homestead estate, Mrs. Brown's one-half interest
would be more than the amount of the note that was given
her in lieu of that interest. If her personal property, for
which she received insurance money, was worth $1,000, and
Mr. Brown transferred to her the homestead interest,
$2,000, and one-half of the value of the land after deduct-
ing that interest this would be more than Mrs. Brown re-
ceived as her interest in the proceeds, and the creditors of
Mr. Brown could not complain. The creditors of Mr.
Brown therefore are not in a position to complain of her
purchase of this property as she did.

The judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.

LETTON, J., dissenting.

I did not hear the argument in this case; but, since the
doctrine announced in the second paragraph of the syl-

labus is directly opposed to the language of the statute and is of great importance, I feel it my duty to call particular attention to it by this dissent. Section 1269, Rev. St. 1913, provides: "The right of a married man or woman to inherit a part or all of the real estate of which his or her spouse was seized of an estate of inheritance at any time during the marriage *may be barred*   *   *   *   *by the sale of such real estate under execution* or other judicial sale, during the lifetime of the owner." In *Gaster v. Estate of Gaster,* 92 Neb. 6, 14, Sedgwick, J., says, speaking of the language of this section: "It recites the right of a married man or woman in the property of his or her spouse, provides in express terms how that right may be barred, and excludes the power to bar that right by will." The holding in the present case is inconsistent with this statement. It holds, in effect, that the right of one spouse to inherit the real estate of the other can *not* "be barred *   *   *   by the sale of such real estate under execution *   *   *   during the lifetime of the owner." This holding affects the property interests of every creditor of a man or woman in the state who owns real estate in excess of the homestead exemption. The language of the statute is plain. It requires no construction. Formerly a sale of the wife's real estate to pay her debts barred the curtesy of the husband. *Miller v. Hanna,* 89 Neb. 224. But a sale for the husband's debts did not bar the dower right of the wife in his real estate. *Butler v. Fitzgerald,* 43 Neb. 192. The legislature by this statute changed the law, placed husband and wife on a parity in this, as in other respects, and made the real estate of either spouse, in excess of the homestead exemption, subject to sale for his or her debts.

In *Gaster v. Estate of Gaster,* 92 Neb. 6, the writer of that opinion also said: "No duty of this court is more manifest and exacting than the duty to avoid trespassing upon the province of the legislature. *   *   * It is not for this court to determine the legislative policy, nor to criticize that policy when adopted by the lawmakers. If apparently matters have been omitted in legislation which would have been supplied if brought to the attention of the

lawmakers, it is not within the province of the court to supply such omissions. Hasty and ill-considered legislation can be revised only by the legislature itself." This is sound doctrine. It is equally true that, when the legislature has spoken in plain and unambiguous language, it is not for the court to interpret language that needs no interpretation, or to disregard and virtually repeal the law. A law may seem to the members of this court to be unwise, but, nevertheless, it is the duty of the court to declare what has been plainly written, and not strain the language in order to inject a new meaning, and thus attain a result that appears to it to be more desirable. It is for the legislature, and not for the court, to repeal or amend a statute.