KATHERYN LAUGHLIN ET AL., APPELLEES, V. EDITH L. GARDI-
NER ET AL., APPELLANTS.

FILED FEBRUARY 28, 1920. No. 20633.

1. **Homestead: CONVEYANCE.** Where a wife with knowledge of the
   material facts, and in the absence of fraud, voluntarily joins her
   husband in the conveyance of a homestead, she is thereafter estop-
   ped from asserting any right, title or interest therein.

2. ———: ———: **LIEN.** When real estate is conveyed to a wife, or
   to another in trust for her, in exchange for a deed to a homestead
   in which the wife joins, it is not error for the district court to
   render a judgment holding the real estate so conveyed to the wife
   as security for a judgment lien against such homestead that was
   fraudulently concealed from the vendees by the vendors at the time
   of the exchange of the properties.

3. **Mortgages: NOTICE.** Where a grantor remains in possession of real
   estate after execution of the deed therefor, one who loans
   money on such real estate and takes a mortgage lien as security
   is charged with notice of the right, title or interest of such oc-
   cupant in the property. *Smith v. Myers*, 56 Neb. 503.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*H. M. Sinclair* and *Courtright, Sidner & Lee*, for
appellants.

*John A. Miller, Warren Pratt* and *N. P. McDonald*,
contra.

DEAN, J.

Katheryn and Margaret Laughlin are sisters. They
began this action against William J. and Edith L. Gardi-
ner, his wife, Violet E. Gardiner, a daughter, and Charles
K. Davies to have certain land, conveyed to them by Gar-
diner and wife in a sale and exchange of real estate, re-
leased from a judgment lien in favor of Davies, but own-
ed by the Exchange Bank of Gibbon, and to have the
amount of such judgment lien paid by William J. Gar-
diner, or, if he fails to pay, that it be paid from the pro-

ceeds of the sale of certain real estate obtained from plaintiffs by Gardiner and wife in the exchange of property. The defendant Nebraska State Building & Loan Association held a first mortgage lien, executed by Violet E. Gardiner, on real estate lately owned by plaintiffs, and now in their possession, which mortgage lien plaintiffs allege is subject and inferior to their rights in the mortgaged property. The decree protecting, as it does, the interests of Davies and the Exchange Bank of Gibbon, they, as well as plaintiffs, ask for affirmance of the judgment. Plaintiffs prevailed, and defendant Edith L. Gardiner, claiming a homestead interest in the land conveyed to plaintiffs, and the defendant loan association, claiming a first mortgage lien on the property conveyed to Violet E. Gardiner, separately appealed.

On and before February 22, 1917, defendant William J. Gardiner owned an 80-acre farm in Buffalo county. On that date he contracted in writing with plaintiffs for a sale and exchange of real estate, wherein he agreed to convey to them his farm by warranty deed, free of incumbrance, except a $2,800 mortgage. The contract also provided that plaintiffs should give $8,000 for the farm in manner following, namely, $2,200 in cash, a house and lot in Kearney, valued at $3,000, and assume payment of the $2,800 mortgage. To fulfil their part of the agreement, plaintiffs, as soon as the contract was executed, borrowed $5,000, giving a mortgage on the 80 acres as security, and used the money to pay the $2,800 mortgage and a $1,200 mortgage on the eighty that was not referred to in the contract. The remainder of the $5,000 was paid to Gardiner. Plaintiffs then conveyed by deed of warranty to the defendant Violet E. Gardiner, at the request of Mrs. Gardiner and her husband, the house and lot referred to in the contract. This completed the payment of the purchase price of the farm. Thereupon Gardiner and wife delivered to plaintiffs on April 28, 1917, a deed conveying the 80-acre tract to plaintiffs jointly. The deed to the farm was signed and acknowledged by

Gardiner and wife on April 2, 1917. On delivery of this deed to plaintiffs, they entered into, and have ever since remained in, possession of the farm. A few days after taking possession of the farm Katheryn Laughlin was informed by Davies that he owned a judgment lien against the 80-acre tract approximating $1,550 that was obtained in a suit against William J. Gardiner. This was the first intimation that plaintiffs, or either of them, ever had of the existence of the Davies lien.

Respecting the Davies judgment lien, counsel for Mrs. Gardiner makes this statement in his brief that seems fairly to reflect the facts: "It appears from the petition in that case that Davies signed a note (for $1,550) as surety for William J. Gardiner as part of the purchase price of a butcher's shop in Gibbon, and Gardiner had agreed to give Davies a mortgage on the land in question to indemnify him therefor, and the suit was for specific performance of that contract. Into that action was injected a claim by Davies for $80 as commission for making the trade. And also a claim of Halloway & Ross for $260.50 on a note given by Gardiner in the deal. This mongrel lawsuit was tried to the court and resulted in a decree for specific performance and in two money judgments at law; one in favor of Davies for $51.50, the other in favor of Halloway & Ross for $269.58. The costs of the action in the amount of $100.55 were taxed against Gardiner. The law judgments were entered on the judgment docket and properly indexed. The equity decree was not entered on the judgment docket, nor was a copy of this decree filed in the office of the register of deeds. An execution was issued on the law judgments, which was paid and so noted on the record. The decree * * * contains the usual provision that, in the event that the mortgage is not executed and delivered within a time certain, the decree (shall) stand in its stead. There was no mortgage executed. So it is the decree or nothing. The important point in so far as these proceedings affect the present controversy is the wife, appellant Edith L. Gardiner, was not a party to that action."

As stated by counsel, Mrs. Gardiner was not a party, but she was present at the trial, was a witness in the Davies case, and had knowledge of the Davies lien. It appears too, that a *lis pendens* was filed in the recorder's office when the Davies suit was begun.

It does not clearly appear that the 80-acre tract was a homestead when the Davies judgment was obtained. But it partook of the homestead character when the exchange contract was signed by plaintiffs and William J. Gardiner. It is argued that because Mrs. Gardiner did not join her husband in signing the exchange contract it is therefore void because the land is a homestead. Section 3079, Rev. St. 1913, is cited by Mrs. Gardiner's counsel. The act provides: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." Mrs. Gardiner, having joined her husband in the execution and acknowledgment of the deed, came within the meaning of the act.

These material facts, among others, plainly appear. Mrs. Gardiner on direct examination testified that the terms of the proposed exchange of the properties were talked over between herself and husband, and that it was agreed between them that the Laughlin town property was to be conveyed to her if she would join in the deed to the farm. It is not contended, nor even suggested, that plaintiffs knew about this agreement between Gardiner and his wife. Mrs. Gardiner testified that in the Laughlin deed to the town property, by her own direction, her daughter Violet was named as grantee so that, as she expressed it, Violet might take care of it for her. Neither fraud nor deception appears to have been employed to induce Mrs. Gardiner to join in the conveyance. We conclude that a valid exchange of the respective properties was consummated by the parties and that both Gardiner and his wife, by their deed of conveyance, parted with all their right, title and interest in the 80-acre tract.

Counsel for Mrs. Gardiner insists that the town property cannot be lawfully charged with the Davies lien, as decreed by the district court, because it is solely her husband's debt and because the town property does not belong to him but is her property. We do not think the argument is tenable. Mrs. Gardiner, with full knowledge of the material facts, joined her husband in the execution and acknowledgment of the warranty deed that conveyed title to the farm to the Laughlins, and as consideration therefor the title to the town property was to be conveyed to her, but instead, and by her own express request, the record title was not placed in her name but in the name of her daughter Violet, apparently in trust for her. Except that she held the town property for her mother, Violet had no interest in it whatever.

Any defect in the title to the farm must of course be made good by the grantors to the grantees, and in view of the consideration, namely, the town property, that Mrs. Gardiner as a grantor received for joining in the deed, such property is therefore fairly chargeable with the Davies lien to such extent as may be necessary to pay it off and release the farm therefrom in the absence of payment by her husband.

It is argued that Mrs. Gardiner still owns a marital interest in the 80 acres of farm land. But when she joined her husband in the deed this interest was of course extinguished.

Defendant Mrs. Gardiner argues that plaintiffs' remedy is a rescission of the contract. On this point the court made the following findings that are amply sustained by the record, namely: "That plaintiffs are entitled to keep and retain possession of said lot until the lien of the decree in favor of Charles K. Davies is satisfied and discharged, that the consideration paid by the plaintiffs to the defendants for said land has been paid out and expended by them; that the mortgages on the land which were executed thereon by said Gardiner and wife have been paid and satisfied, and another mortgage has been

placed thereon by the plaintiffs without their knowledge of the Davies lien, and the house and lot has been incumbered with a mortgage for $1,500 to the Nebraska State Building & Loan Association, and the money received therefor has been expended by them, so that said mortgage cannot be satisfied by the Gardiners; that said William J. Gardiner is insolvent and Edith L. Gardiner has no property except her interest in said lot; that the situation of the parties has so changed that rescission of said sale is impossible; the parties cannot be placed in *statu quo,* and actual rescission is not necessary to do complete justice between the parties; that the plaintiffs have a lien on said lot to the amount and extent of the said lien in favor of Charles K. Davies on said land, and are entitled to a foreclosure thereof to satisfy the said Davies lien on the land."

The defendant loan company appears in the record as claimant of a first mortgage lien on the town property and contends that its lien is prior and superior to the Davies lien. It argues that the district court erred in holding to the contrary. It seems that on the same day that the Gardiners obtained the deed to the town property the company loaned to them $1,500 for which Violet Gardiner executed a note secured by a first mortgage. The loan was made in reliance on the Laughlin deed. But at the time that the mortgage was executed and the money was paid over to Violet Gardiner by the loan company, the Laughlins had not yet relinquished possession of the town property, and, to protect their interest, they were still in possession when this suit was tried.

On this feature of the case the court properly found: "That if the defendant William J. Gardiner shall fail for twenty days from the entry of this decree to pay to the Exchange Bank of Gibbon, Nebraska (owner of the Davies claim), the sum of $1,271.10 with interest thereon at 7 per cent. from this date, and procure a satisfaction of the decree and the *lis pendens* filed in the case of

Charles K. Davies v. William J. Gardiner in the district court of Buffalo County, Nebraska, together with the costs of this action, the interest of the defendants in lot 3 in block 16 of Ashland addition to Kearney, Nebraska, be and the same hereby is foreclosed, and said premises are ordered to be sold as upon execution and the proceeds of said sale shall be applied to the payment of the amount due to the Exchange Bank of Gibbon, Nebraska, or to the plaintiffs to reimburse them if they shall pay the same; the costs of this action and the remainder, if any, shall be paid to the Nebraska State Building & Loan Association to the extent of the amount due on its mortgage on said premises, and any surplus remaining shall be paid to the defendant Edith L. Gardiner."

The loan company now argues that the retention of possession by the Laughlins, of less than a day's duration, was not sufficient to notify it of any right, title or interest that they might have in the property recently conveyed. It contends that a vendor who has delivered his deed should thereafter be estopped from asserting an interest contrary to the terms of the conveyance, even though such vendor is yet in actual possession of the property conveyed.

Authorities from other jurisdictions are cited that seem to support its contention, but they do not appeal to us, in view of the fact that this jurisdiction for more than 30 years has been committed to the rule that a person who deals with the vendee of real estate is bound to take notice of any rights that the vendor in possession may have, even though such possession may continue after the execution and delivery of the deed. *Smith v. Myers,* 56 Neb. 503; *Hansen v. Berthelsen,* 19 Neb. 433. The rule is reasonable, and it does not appear to us that another should be substituted. It is plain in its require·ment and is easily understood. Whether a vendor has relinquished possession and his vendee has acquired possession is a question that is not ordinarily difficult to determine. In the absence of fraud or of waiver, and in

view of our former decisions, we do not think that an arbitrary time limit should be fixed by the court in which a vendor, who is yet in actual possession of real estate conveyed by him, may be held to have relinquished possession. Such possession remains a question of fact. On this point we adhere to the rule announced in the *Smith* and *Hansen* cases cited herein.

The judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.

CORNISH, J., dissenting.

I had always supposed the law to be that when, in a trade of this sort, one of the parties discovers fraud or misrepresentation, he has at his election either of two remedies: He can disaffirm the contract and ask a rescission, or he may stand upon the contract and ask damages for the fraud or misrepresentation. Either of these remedies is supposed to be adequate, and they are inconsistent.

My associates agree with this rule as a general statement of the law, but insist that the rule laid down is not a violation of it. I hope it is not, because I think the rule is founded upon broad principles of justice. To hold that the party who claims fraud may stand upon the contract and yet refuse to perform upon his part by making delivery, that he can retain possession of both properties because of an alleged fraud, thereby depriving the other party of his right to a trial by jury upon the question of a fraud which he may deny, is an innovation upon ancient and settled practice. If, because of insolvency, or because rescission has become impossible, it becomes necessary, for the protection of the defrauded party, to retain both pieces of property, then such trust may be ordered in equity; but this would be in a suit where the defrauded party was endeavoring to be placed in *statu quo*. A condition would be that he offer to rescind. Damages for fraud cannot be assumed. He cannot create a right by

Laughlin v. Gardiner.

default upon his own part. *American Building & Loan Ass'n v. Rainbolt*, 48 Neb. 434.

The upshot of the decision is unjust. Gardiner's wife was the owner of a homestead. She had an interest in the 80 acres as his wife which was not subject, in this way at least, to the payment of her husband's debts. She would not convey her interest in the land until she was promised that the house and lot, for which it was in part traded, should be deeded to her. And this was done. The plaintiffs were bound to take notice of that. The contract between the plaintiffs and Mrs. Gardiner's husband, not signed by her, was a nullity. The result of our judgment is that Mrs. Gardiner's homestead right and interest in her husband's land are taken away from her to pay her husband's debts, contrary to the agreement which she made. True, she signed the deed, but is she not entitled to the consideration she was to receive?

The following opinion on motion for rehearing was filed June 7, 1920. *Former judgment of affirmance modified, and rehearing denied.*

Per Curiam.

On application of the Nebraska State Building & Loan Association for rehearing. The brief of this appellant was not prepared in accordance with rule 12 (Supreme Court Rules, 94 Neb. XI), and one of the points attempted to be presented was overlooked in consequence of this.

On re-examination of the record in the light of the facts presented in the brief of *amicus curiæ*, the facts demand a modification of the opinion as to the priority of liens upon the town property.

On April 28, 1917, the agent for the Laughlins delivered the deed to the house and lot to Gardiner. On the same day Gardiner took the conveyance to the agent of the loan association, delivered the mortgage and received a check for the amount of the loan. At that time the Laughlins, who were in possession, had no knowledge

that Davies was claiming a lien upon the 80 acres of land they had procured from Gardiner. The settled law in this state is that possession of real estate is notice to an intending purchaser or mortgagee of whatever rights the person in possession then asserts. The association was therefore chargeable with notice of whatever claim of rights of the Laughlins inquiry made of them at that time would have disclosed. The evidence is undisputed that such an inquiry would have disclosed that they were then merely holding by sufferance, ready to yield possession at any time, and making no claim of any interest in the property. Their possession therefore was not notice of any infirmity in the title. The loan company was an innocent purchaser or mortgagee and their mortgage was recorded before the rendition of the decree creating a lien in favor of the Laughlins. The lien of the mortgagee was prior thereto.

The former judgment and opinion is therefore modified so as to declare the lien of the building and loan association prior to that of plaintiffs upon the premises involved.

REHEARING DENIED.