PHILIP F. ABBOUD, ADMINISTRATOR C. T. A., APPELLEE, V. LEWIS J. BOOCK, APPELLANT.

290 N. W. 713

FILED MARCH 8, 1940.    No. 30784.

Reed, Ramacciotti, Robinson & Hruska and Henry R. Marshall, for appellant.

Anson H. Bigelow and Walter H. Justin, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is a proceeding to secure a license to sell real estate belonging to a deceased wife, in order to pay legacies given in the joint will of the husband and wife. The husband objected to granting the license on that portion in which he claimed a homestead right. The court held that the husband disposed of the right of homestead by executing the joint will, and granted the license. Motion for new trial being overruled, husband appeals.

The administrator of the estate of Anna Louise Boock made application for license to sell real estate to pay costs of administration and specific legacies, there being insufficient personal property to pay the same. The surviving husband objects to the granting of the license on the ground that the property sought to be sold was at the death of the testatrix their homestead, and by reason thereof he has a life estate therein not subject to sale. A guardian ad litem of the minor heirs of the deceased wife also filed objections that it would not be advantageous to sell the property at forced sale. The trial court overruled all objections, and granted a license to the administrator to sell the real estate

at private sale within 90 days from the date of the decree, to be sold upon terms approved by the court, or at public sale, in the manner provided by law, for $500 cash, and balance on confirmation, with the right to sell in separate parcels if deemed advisable by the administrator. The trial court held that the widower had disposed of his right of homestead by entering into a joint will with his wife, and that all of the real estate belonged to the deceased at her death.

The petition of the administrator set out that the taxes and costs of administration would amount to the sum of $500; that all of the personal property has been reduced to cash except some fractional interests in a possible cause of action in Cook county, Illinois, of no present value.

The petitioner further shows that the joint will of Anna Louise Boock, deceased, and her husband, Lewis J. Boock, left bequests of $1,000 to Joseph W. Corbett and $100 apiece to each of six grandchildren, making a total of $1,600 in legacies, which by the express terms of the will are made a charge against said real estate, and left the remainder of her estate to her surviving husband; that the husband was appointed executor under the will, and charged jointly with the petitioner in the administration of said estate, but the husband refused to join in an application to the court for license to sell, and thereupon Philip F. Abboud, administrator C. T. A. (*cum testamento annexo*), applied to the county court for Douglas county for authority to file his petition separately for said license, and, being duly authorized, prays for a license to sell real estate from the district court.

The guardian *ad litem* of the grandchildren filed an answer, setting forth that the costs of the administration would exceed $800, the legacies, $1,600, and that the most that can be realized from a forced sale of the real estate is $1,250, and therefore prays that license be not granted.

Lewis J. Boock, widower of Anna Louise Boock, filed answer, showing that his wife died June 26, 1937; that they were married February 11, 1915, and resided together con-

tinuously until her death, and that no children were born of said marriage. The widower further alleges that the property was purchased by the husband and wife in 1922, with the proceeds of their separate estates, although the fee title was placed in the name of the wife; that upon the death of the wife the homestead character of the property continued in the husband, and he acquired a life estate therein, and that he has continued to occupy the premises since her death, and has not by any act on his part re-linquished or abandoned his homestead therein, and he therefore prays that no license be granted.

The reply of the administrator alleges that lots 1, 2, 3, and 4, in block 3, of Cottage Home View addition to Omaha, were purchased, and that they resided upon lots 3 and 4 thereof, which thereupon became their homestead, and denies each and every other allegation, and that lots 1 and 2 are not subject to the claim of homestead. He further alleges that on February 20, 1934, the husband and wife jointly executed their last wills and testaments, and delivered the same to a third person for the benefit of the survivor, and for the benefit of Joseph W. Corbett, son of the deceased, and her grandchildren; that said joint will remained unrevoked until the death of Anna Louise Boock, when it was admitted to probate as her last will and testament on July 27, 1937.

It is claimed in the brief of the administrator that the husband's act in agreeing to, and in joining in, a joint will would seem sufficient to be charged as his election to take under the will, and bar his homestead rights, especially as the Nebraska statutes do not bar disposing of the homestead life estate by will.

The answer to this argument is furnished by an examination of the two sections of our statute relating to this question. Section 40-104, Comp. St. 1929, reads: "The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife."

Section 40-117, Comp. St. 1929, reads: "If the homestead

was selected from the separate property of either husband or wife, it vests on the death of the person from whose property it was selected, in the survivor, for life, and afterwards in decedent's heirs forever, subject to the power of the decedent to dispose of the same, except the life estate of the survivor, by will."

"A homestead right is created by statute; not devised by a will. Undoubtedly the testatrix so understood when her will was executed. Hence, there is little, if anything, in the provisions of said will which could in any way throw light upon the intention of the parties when they made the prenuptial contract. Whatever the facts may be in that regard, the will does not constitute such material and sufficient evidence as to change the result of the trial." *Mill Owners Mutual Fire Ins. Co. v. Petley*, 210 Ia. 1085, 229 N. W. 736.

Another case from Iowa, involving an antenuptial contract, throws light on the question involved in the case at bar. Especially is this true because the homestead rights of the husband were not mentioned in the instant case.

"What effect upon this controversy is to be given to the antenuptial contract? It does not in terms make any mention of homestead or homestead rights, nor do we think it should be held that the relinquishment of such right was intended or was in the contemplation of the parties in making the contract. The homestead right is a favorite of the law, and its surrender or waiver will not be presumed, nor will such intent be inferred from the use of words of a general and indefinite signification." *Plistil v. Kaspar*, 168 Ia. 333, 150 N. W. 584.

Several opinions of this court assist us in the disposition of the case. "The law is settled that, where a husband and wife reside upon a homestead and the wife dies, the homestead character of the land continues and the surviving husband, although he may have no children or dependents residing with him, may still retain the homestead as such." *Dougherty v. White*, 112 Neb. 675, 200 N. W. 884. See, also, *Bartels v. Seefus*, 132 Neb. 841, 273 N. W. 485.

"The homestead statutes are designed to protect a person in his home, and that the nature of his title thereto is of secondary importance to his right of shelter therein." 89 A. L. R. 540, Ann.

"A widow need not account to the estate of her husband for the rents and profits of their homestead which have accrued subsequent to his death." *In re Estate of Fletcher*, 83 Neb. 156, 119 N. W. 232. See, also, *Laughlin v. Gardiner*, 104 Neb. 237, 176 N. W. 727; *Lewis v. McAdams*, 129 Neb. 490, 262 N. W. 7; *In re Estate of Robertson*, 86 Neb. 490, 125 N. W. 1093.

"Under the provisions of section 17, chapter 36, Compiled Statutes 1903, a homestead which was the separate property of the wife, at her death, vests in her surviving husband for life, and the wife has no power to limit or dispose of the life estate of the survivor by will." *Brichacek v. Brichacek*, 75 Neb. 417, 106 N. W. 473.

"Frederick Teske and wife for a valuable consideration orally agreed with Carl Teske that he should at their death have certain lands, in a part of which they had at the time a homestead estate. In an action by Carl against Frederick it was decreed that the agreement was void as to the homestead estate and valid as to the remainder of the land." *Teske v. Dittberner*, 83 Neb. 701, 120 N. W. 198.

From the exhaustive article on "Homesteads," by Dean Foster, found in 3 Neb. Law Bulletin, 389, we cite two paragraphs:

"Section 45—Rights of Possession on Death of Homestead Owner. Since a life estate in the homestead vests in the surviving spouse on the death of the owner, it follows that such spouse is entitled to possession of the homestead premises as against every one. Even though debts exist which are enforceable against the homestead, the administrator of the deceased owner's estate or the creditors must proceed to their collection not by taking possession of the property but by a judicial sale. An administrator, taking possession of the homestead, is subject to an action of ejectment and an accounting for rents and profits received. The surviving

spouse may lease the homestead and is liable to no one for an accounting of the rents and profits received subsequent to the death of the homestead owner."

"Section 46—Restraint on Testamentary Disposition. If a homestead owner were left entirely free to devise the homestead, by his mere whim or caprice, he could render of little avail the precautions that the legislature took to prevent the disruption of his home, upon his death. Hence, his power to devise is expressly restrained. Every devise he makes is subject to the life estate of the spouse, in the event of the spouse's survival. Even if the surviving spouse accepts the executorship under a will which devises the homestead to the children, the devise to the children is subject to the life estate of the surviving spouse. The assent of the spouse cannot supply the lack of power of the testator, nor can the spouse be concluded as to homestead rights on any theory of election, for no choice is here possible."

From these authorities and others which amply support us, we reach the following conclusions:

(1) That the wife cannot dispose of the life estate of her husband in the homestead by her will, in absence of waiver on his part;

(2) That the right of the surviving husband to a life estate in the homestead property in which they have lived is fixed by statute, and any disposal thereof must be in strict compliance with the applicable section of our statute;

(3) A surviving husband is not estopped from asserting his life estate in the homestead property by reason of having entered into a joint will with his wife in which his homestead right was not mentioned, nor because he qualified as executor of her will.

We therefore find that the trial court erred in granting license to sell the real estate in which the surviving husband had a life estate.

REVERSED.