PETER FREDERICK, SR., APPELLANT, V. MARY GEHLING, APPELLEE.

FILED OCTOBER 18, 1912. No. 17,624.

1. **Judicial Sales:** VACATION. Ordinarily judicial sales will not be set aside for inadequacy of the price paid, in the absence of fraud or mistake, when the purchaser pays two-thirds of the appraised value of the defendant's interest in the land.

2. **Liens: Foreclosure: Good· Faith.** When two parties have liens on the same land, and the land is of sufficient value to pay all liens, there should be entire good faith between the lienholders to realize sufficient to satisfy both liens.

3. **Subrogation.** The right of subrogation must depend upon the facts and equities of the particular case in which it is asserted.

4. ———: **Liens.** F. bought land at execution sale upon a judgment owned by him. The certificate of liens showed several mortgages prior to the lien of his judgment. The land sold for more than two-thirds of the appraised value, but much less than its actual value. The prior mortgages had in fact been paid. *Held*, That a mortgagee whose mortgage was on record before the execution sale, and was given to secure a loan with which the prior mortgages were paid, upon an understanding with the mortgagor that it should be a first lien, is entitled to subrogation to the lien of the prior mortgages.

Appeal from the district court for Sheridan county: William H. Westover, Judge. *Reversed with directions.*

*Isham Reavis* and *Albert W. Crites,* for appellant.

*Edwin Falloon* and *J. H. Edmunds, contra.*

Sedgwick, J.

When this case was here before (89 Neb. 93), it was determined upon a general demurrer to the defendant's answer. The character of the case is stated in the former opinion, and the controlling allegations of the answer demurred to are also stated. The principal defense then insisted upon was that, in the sale upon the judgment under which the plaintiff claims title, the prior mortgages were in fact deducted as liens in the appraisement of the land. It was clearly and positively alleged in the answer "that these liens were deducted from the value of said premises, and said premises were appraised by said appraisers after said liens had been deducted at the sum of $500." And again: "That at the time said sale was made said liens were still of record and in force on said land and deducted from its appraised value." It was held, as

against a general demurrer to the answer, that these allegations were sufficient to charge the plaintiff with these prior liens as a part of the purchase price of the land at the sale. The cause has been retried, and is now presented upon the question of the sufficiency of the evidence; the trial court having held that the defendant was entitled to have her mortgage subrogated to the lien of the prior mortgage. The principal question now presented upon this appeal is as to this defense, which was also included in the answer, and upon which the trial court has now found in favor of the defendant.

It appears now from the pleadings and evidence that when the plaintiff purchased the land at sheriff's sale under his judgment he was not personally present at the sale, and had no actual knowledge that the prior mortgage had not been released of record, nor that the defendant's mortgage had been duly recorded. It seems, so far as he is personally concerned, that he purchased the judgment against Buckminster and also the land at the execution sale in good faith. This defendant also acted in good faith in loaning the money for which her mortgage was given and with which the prior incumbrance was paid. The trial court found that the land, at the time of the trial, was worth $1,600. The plaintiff's judgment at that time, with interest and costs, amounted to less than $300. The defendant's mortgage was for $600 and some interest. The value of the land then was amply sufficient to pay both claims. Under such circumstances there should be perfect good faith between the parties. The appraisers at the sheriff's sale appear to have valued the land at $500, and the plaintiff purchased it at the sale for $333.35, which was more than two-thirds of its appraised value. It is insisted that under these circumstances the existence of prior liens and the fact that they are shown upon the appraisement are immaterial, and in ordinary cases of judicial sale this is the rule.

It will be remembered that Buckminster was the owner of this land and had given this plaintiff two mortgages

thereon. One of these mortgages included also some land in Richardson county. The plaintiff began an action in the district court for Richardson county to foreclose the last-mentioned mortgage and obtained a judgment of foreclosure therein. Thereupon Buckminster's brother loaned him $425 with which to pay to the plaintiff the amount of the said judgment in foreclosure, with interest and costs, together with the plaintiff's other mortgage, which covered only the land in question. It is conceded in the briefs that Buckminster's brother, while he held his mortgage on this land, would have been entitled to subrogation to the prior liens held by the plaintiff as against the owner of the land and the plaintiff also. The mortgage, under which the defendant claims, was given by Buckminster to the defendant to secure the money which he borrowed with which to pay this prior mortgage. Some time before either of these two last-named mortgages was given the plaintiff purchased a judgment in justice court of Richardson county against Buckminster, and caused the same to be duly transcripted and docketed in Sheridan county as a lien upon the lands of Buckminster. Plaintiff caused an execution to be issued upon that judgment and levied upon this land. In the meantime, and before the execution sale, the defendant's mortgage was duly recorded in Sheridan county. The appraisers at the execution sale included both the defendant's mortgage and the $425 mortgage to Buckminster's brother in the statement of liens certified by them to be prior to the lien of the plaintiff's judgment. The plaintiff obtained his title through the acts of the sheriff and appraisers, and is therefore bound by those acts, so far as they affect his title. For the purposes of this action, then, he must be held to have known that the appraisers certified and returned to the court that there were liens upon the land prior to his own, amounting to $1,182.30. The plaintiff by his purchase took only such title as his judgment debtor, Buckminster, had in the land.

The evidence in many respects is not very clear and

satisfactory, but it appears from the record that the release of the prior mortgage and the execution of the defendant's mortgage were on the same day, and, in the absence of any other evidence upon that point, it must be presumed that the payment of the prior mortgage and the giving of the defendant's mortgage were at the same time and a part of the same transaction. Under these circumstances was the trial court right in holding the defendant's mortgage prior to the plaintiff's title? It must be conceded that, in view of the very many decisions of this court in regard to the right of subrogation, this question is not free from difficulty. The evidence does not show that there was an express agreement by either the mortgagor or mortgagee in the prior mortgage that this defendant should have that right of subrogation. Her mortgage, however, conveys her "an absolute title in fee simple, including all the rights of homestead, to have and to hold the premises above described, with all the appurtenances thereunto belonging, unto the said Mary Gehling and to her heirs and assigns forever." In *Meeker v. Larsen*, 65 Neb. 158, it is said there must be an agreement or understanding to that effect with one of the parties to the prior lien, or the right of subrogation will not exist. An equivalent expression is used in many other of our decisions; but in other cases it is assumed at least, if not decided, that there must be an express contract, in the absence of any special equities in favor of the subrogation. In *Rice v. Winters*, 45 Neb. 517, the mortgage was given to procure a loan with which to pay off and discharge a prior mortgage, and the mortgagor agreed to secure the loan by a first mortgage, and it was held that the mortgagee in the later mortgage was not entitled to subrogation as against a mechanic's lien intervening between the two mortgages. In a later case, in an opinion by the same commissioner, it was held that a mortgagee whose mortgage was given to secure money with which to pay a prior mortgage, together with taxes and other claims against the land, was entitled to subrogation to

the mortgage and other claims so paid as against the heirs of the mortgagor. *Arlington State Bank v. Paulsen*, 57 Neb. 717, 747. It was said in the opinion: "Only the creditors of the beneficiaries are objecting, but their claims upon the interests of the beneficiaries were subordinate to the debts of the testator against his entire estate; and if the corporations be subrogated, the creditors of the beneficiaries have not been deprived of any right." In the opinion some 15 of our prior decisions are cited as holding this doctrine. In that case the heirs of the mortgagor were resisting the subrogation. In this case it is the purchaser at execution sale of the mortgagor's interest, and the principle would seem to be the same.

The plaintiff cites and relies upon *Bohn Sash & Door Co. v. Case*, 42 Neb. 281, in which it was said: "The mere fact that with the proceeds of a later mortgage prior mortgages have been paid that the lien of them might be removed affords no ground for subrogation thereto." But it is also said in the opinion: "The real question in all such cases is whether the payment made by the stranger was a loan to the debtor through a mere desire to aid him, or whether it was made with the expectation of being substituted in the place of a creditor. If the former is the case, he is not entitled to subrogation; if the latter, he is."

In *Boevink v. Christiaanse*, 69 Neb. 256, the court, in an opinion prepared by Mr. Commissioner HASTINGS, said: "In the recent case of *Cumberland Building & Loan Ass'n v. Sparks*, 49 C. C. A. 510, a loaner who had furnished money to pay off a prior mortgage, under an agreement that it should have a first lien, and had taken an invalid mortgage for its security, was held entitled to subrogation, not only against the mortgagor, but against another lienholder who had notice of the facts"—and that the supreme court of Illinois in *Home Savings Bank v. Bierstadt*, 168 Ill. 618, held that " 'conventional subrogation' will always be decreed, where it is in accordance with the understanding of the parties, and there is no gross negli-

**17**

gence, and no injurious result to third parties." It is further said: "Both of these cases are abundantly fortified by other decisions," and that "there is no showing of any injurious change in the devisees' position because of plaintiff's paying the mortgage."

In this case the plaintiff is claiming the land. He is not injured by substituting the new mortgage for the prior mortgage, which was superior to his lien. The language of this court quoted above from the opinion last cited is applicable. The land is of sufficient value to pay both his lien and the defendant's mortgage. There is perhaps a presumption that it would have brought sufficient at the sheriff's sale for that purpose if the prior mortgage had not been certified as an existing lien. There is no doubt, as against the original mortgagor, the defendant's equities are superior. The plaintiff has purchased only the rights of the original mortgagor. Through the mistake of those acting for the plaintiff, the title conveyed by the sheriff's sale was discredited. The plaintiff has brought the matter into a court of equity, and he should do equity by the defendant. In this case the defendant took her mortgage at the same time that the prior mortgage was paid with the money that she loaned; and there is no doubt, under this evidence, that both she herself and the mortgagor expected and understood that she would have the first lien upon the land, instead of the mortgage which was paid with her money.

The plaintiff's petition was framed upon the theory that he took the entire title by his purchase at sheriff's sale, and the prayer was that the defendant's mortgage be canceled. The court decreed that the defendant's mortgage should be canceled upon payment by the plaintiff of the amount secured thereby, and so directly answers the petition and the prayer thereof. Under the facts alleged in the defendant's answer she would be entitled to a foreclosure of her mortgage, and the prayer of her answer was for general equitable relief. There ought not to be any further litigation in regard to this matter. A court

of equity should, if practicable, enter such decree as will dispose of all the matters involved in the litigation. Defendant's mortgage should be allowed as first lien in the amount paid to redeem the land from the prior mortgage, and interest thereon at the rate prescribed in that mortgage to the date of entering the decree. The trial court allowed her the full amount of her mortgage, which was somewhat more than the amount to which she was entitled as a prior lien upon the land.

The trial court found that there was no merit in the claim of the intervener, and the intervener has taken no cross-appeal. It is contended, however, in the brief that the intervener is entitled to a decree on the ground that the land was his homestead at the time the plaintiff's judgment is alleged to have become a lien thereon. The evidence does not show that the land was a homestead, and the decree of the district court in that regard is correct.

The judgment of the district court is reversed and the cause remanded, with directions to enter a decree foreclosing the defendant's mortgage in the amount of the prior mortgage, $425, and interest, and allowing the plaintiff a reasonable time to redeem therefrom, and quieting the plaintiff's title in the land, subject to the defendant's lien.

REVERSED.

LETTON, J.

I concur in the result only. The maxim, "He who seeks equity must do equity," applies.