GEORGE A. HERRING, TRUSTEE, APPELLEE, V. E. C. WHITFORD ET AL., APPELLANTS.

FILED MAY 9, 1930. No. 27045.

N. P. McDonald, for appellants.

*Miller & Randall, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and DAY, JJ., and THOMSEN, District Judge.

GOSS, C. J.

This is a suit in equity brought by a trustee in bankruptcy to cancel a mortgage executed, delivered and recorded by his bankrupt (joined by her husband) within four months of the filing of the petition in bankruptcy and to quiet title to the real property involved. The mortgagee and mortgagors appeal from a final decree canceling the mortgage and quieting the title in the trustee.

The trustee here sues as trustee of the bankrupt estate of Una W. Donnell. He was also trustee of the bankrupt estate of Junius S. Donnell and as such trustee brought another suit in equity to cancel the same mortgage. The bankrupts are wife and husband. So the two suits, brought in the same court at the same time, are companion cases. They were tried together under a stipulation that the testimony in either case might be used in the other so far as applicable. As a fact, the bills of exceptions seem to be identical, one being a carbon copy of the other. The pleadings seem to vary only as required to show the status of the plaintiff as trustee for the estate of the wife in this suit and as trustee for the estate of the husband in the other.

On the trial it was stipulated, among other things, that on March 5, 1928, a petition for involuntary bankruptcy was filed in the Grand Island division of the United States district court against Una W. Donnell of Kearney, and that on April 2, 1928, she was adjudicated a bankrupt and George A. Herring was duly appointed and qualified as trustee; that then and for years prior the bankrupt and her husband were the owners, as tenants in common, of lots 1, 2, and 3, block 10, Ashland addition to the city of Kearney, in Buffalo county, Nebraska, occupy parts of these lots as a home and claim as their statutory homestead all of said lots except the east fifty feet thereof; that Una W.

Donnell was also the owner of six other described lots in the city of Kearney; that on December 22, 1927, a petition against said Junius S. Donnell was filed in the same court charging bankruptcy, and on February 10, 1928, he was adjudged bankrupt and the same trustee was appointed and qualified; that on November 8, 1927, the Donnells executed and delivered their mortgage to E. C. Whitford, the father of Mrs. Donnell, covering the home lots and the other lots to which we have referred, to secure $22,000 evidenced by four notes, all maturing November 8, 1927; that this mortgage was recorded November 19, 1927; that the Donnells were insolvent from and after May 14, 1927, being the date of the failure of the City National Bank in Kearney and the appointment of a receiver therefor; and that Whitford knew they were insolvent on November 8, 1927. The stipulation also recites claims against each of the Donnells filed as claims, allowed and unpaid in the bankruptcy court; it shows that since this action was begun E. C. Whitford has filed claims in the bankruptcy court against each of the Donnells, based on the indebtedness secured by his mortgage, but stating therein that he does not waive his mortgage security.

From the stipulated facts it is conclusively deduced that, when the Whitford mortgage was executed on November 8, 1927, it was within less than four months before the filing of the petition in bankruptcy of Una W. Donnell on March 5, 1928, as well as within less than four months before the filing of the petition in bankruptcy against Junius S. Donnell on December 22, 1927. Its record on November 19, 1927, was still further within the period. So the executing, delivering and recording of the mortgage all came within the four months' period. Under the evidence the effect, if the Whitford mortgage be held good in whole or in part, will be to lessen to that extent the estate of the bankrupt and the payments to other creditors. So on the face of the transaction itself it would appear to be a preference of Whitford over other creditors and violative of section 60 of the bankruptcy act (11 U. S. C. A. sec. 96).

But the defendants answer this by asserting that Whitford had an agreement for a mortgage which constituted an equitable mortgage. Whitford pleaded that, at the time the money was loaned as evidenced by the notes, the Donnells agreed to execute the mortgage, and that it was pursuant to the agreement that the mortgage was made. The evidence shows that the money was borrowed and used to purchase 200 shares of stock in a new bank called the City National Bank, in Kearney, which began business December 8, 1926. It was a consolidation or reorganization of two banks in Kearney, in one of which the Donnells were stockholders and he was an officer. It was desirable that he be an officer in the proposed new bank. He lacked the money. On November 6, 1926, Junius S. Donnell went with another son-in-law of Mr. Whitford to Nebraska City, where they met Mr. Whitford. Donnell asked Whitford for a loan of $22,000 to buy 200 shares of stock in the proposed bank. Whitford asked what he could give as security. Donnell said he would give a mortgage on the home, owned by himself and wife, and on her other lots in Kearney. Mr. Whitford said: "That wouldn't secure the $22,000." Thereupon, it may be fairly concluded from the evidence, it was understood that all but 10 shares of the stock should be put up as collateral, and that they would make out the mortgage when the organization was completed. Whitford prepared the notes, which were signed and delivered by the Donnells. He sent the $22,000 to a bank in Omaha, where payments by stockholders were received. When the required amount was paid in, the organization was perfected and the stock issued. No mortgage was made until long after the bank failed nor until within four months before the petition in bankruptcy. We have carefully read and considered the evidence and have come to the conclusion that, at most, as against the creditors represented here by the trustee, and as to the real estate not exempt as the homestead, there was merely an agreement to execute a written mortgage in the future. Moreover, we are of the opinion that, if there had been an agreement creating an

equitable mortgage, Whitford could not prevail as against the creditors and as to real estate not exempt.

In *In re Great Western Mfg. Co.*, 152 Fed. 123, Sanborn, J., it was said: "A mortgage or transfer of his property by an insolvent debtor within four months of the filing of a petition in bankruptcy against him, which otherwise constitutes a voidable preference, is not deprived of that character or validated by the fact that it was executed in the performance of a contract to do so made more than four months before the filing of the petition."

In *In re Traut's Estate*, 297 Fed. 458, an oral agreement was made to execute a mortgage on a farm as security for a debt. The mortgage was not finally delivered or recorded until within four months of the filing of the petition in bankruptcy. The circuit court of appeals of this circuit held that, although it be assumed for the sake of argument that the land was subject to an equitable lien created by an agreement made prior to four months, yet such title would pass unincumbered for the benefit of creditors and the mortgage executed pursuant to such agreement was voidable by the trustee. The same rule was announced by the circuit court of appeals for the third circuit in *Hayes v. Gibson*, 279 Fed. 812.

In *Corney v. Saltzman*, 22 Fed. (2d) 268, $5,500 was borrowed and the debtor executed notes therefor and adopted a resolution pledging all of the corporation land for the payment of the notes, all on May 27, 1925. On October 6, 1925, a written mortgage was executed. A petition in bankruptcy was filed November 19, 1925. The circuit court of appeals of the second circuit said that an agreement to make a mortgage may not be regarded as a mortgage, and while such an agreement may give rise to an equitable lien between the original parties, respect must be had for the rights of creditors, and under section 60 (a) (11 U. S. C. A. sec. 96a) a mortgage within four months of the filing of a petition in bankruptcy constitutes a voidable preference which is not made valid by being executed pursuant to a contract to make it, although the contract was made before the commencement of the four months.

So we are of the opinion that the mortgage, to the extent that it attempted to give a lien on that portion of the property of the Donnells that was not exempt, must be considered a preference and cannot prevail over the rights of the creditors represented here by the trustee in bankruptcy.

That leaves the question as to whether the mortgage should be held valid as to the homestead interest of the mortgagors. That interest was not available to creditors. The owners' right to incumber or dispose of it was unrestricted and was a matter of no concern to the creditors or to the trustee in bankruptcy. It is suggested that we should presume that the exemption will be preserved in the bankruptcy court, where Donnell has already applied for it. The present action, however, presents the claim of Mr. Whitford to a valid mortgage on the homestead interest, not the question of awarding exemptions to the bankrupt. The trustee has submitted his action to set aside the mortgage to the state court. This court has jurisdiction to decide whether the mortgage is void in whole or in part. If it is valid as to the homestead interest, it should not be held entirely void on the theory that the federal court can otherwise protect the homestead claimants. The decree appealed from denies Whitford any interest whatever under his mortgage. The validity of this mortgage as a mortgage on the homestead interest was sufficiently pleaded by the mortgagee and by the mortgagors.

It is well known that the homestead of a debtor is incapable of fraudulent alienation. *McCormick v. Brown,* 97 Neb. 545; *Smith v. Neufeld,* 61 Neb. 699; *Jayne v. Hymer,* 66 Neb. 785. Where the value exceeds the allowable exemption, a conveyance can "only be held fraudulent as to creditors in so far as it attempted to convey a surplus of the homestead which would, if still remaining in the hands of the grantor, be subject to sale on execution." *Brown v. Campbell,* 68 Neb. 103. In 27 C. J. 445, we find this text, supported by numerous authorities: "Since the creditors are affected only to the extent that the value of the property conveyed exceeds the value of the homestead, where a con-

veyance includes both property which is exempt as a homestead and a property not so exempt, the creditors are entitled to reach the property not so exempt if the conveyance is fraudulent as to them. This, however, is the extent of their rights on setting aside the conveyance, and they can recover nothing beyond the excess over the homestead right."

Similarly the conveyance of a homestead cannot be set aside as an unlawful preference, except where it includes an interest which is not exempt, and then it is a voidable preference only as to the excess value. Section 67 of the bankruptcy act (11 U. S. C. A. sec. 107) provides that transfers or incumbrances made or given by the bankrupt within four months before the filing of the petition shall be void, where the property "is not exempt from execution and liability for debts by the law of his domicile." Section 70 (11 U. S. C. A. sec. 110) vests title in the trustee to all of the bankrupt's assets "except in so far as it is to property which is exempt."

In the case of *In re Bailey*, 176 Fed. 990, it was held: "The title to the homestead property did not pass to the trustee. The fact that it was mortgaged to certain creditors did not make it assets to be administered in bankruptcy. *Lockwood v. Exchange Bank*, 190 U. S. 294, 23 Sup. Ct. Rep. 751, 47 L. Ed. 1061; *In re Nye*, 133 Fed. 33, 66 C. C. A. 139. * * * A mortgage constituting an unlawful preference, where it includes both exempt and nonexempt property, is only voidable by the trustee as to the nonexempt property, and remains a valid mortgage as to the exempt property. *In re Tollett*, 106 Fed. 866, 46 C. C. A. 11, 54 L. R. A. 222; *Vitzthum v. Large*, 162 Fed. (D. C.), 685; *In re Eash*, 157 Fed. (D. C.) 996." And in *First Nat. Bank v. Lanz*, 202 Fed. 117: "A mortgage given by an insolvent debtor within four months prior to his bankruptcy on his homestead to secure an antecedent debt, although accepted by the creditor with reason to believe that it was intended as a preference, could only operate as a preference as to

the excess in value of the property over $2,000, but as to such excess it was voidable."

There was informality in the act of acknowledging the mortgage but not in the form; and the trustee claims this renders the mortgage invalid. The lack of due acknowledgment of the mortgage is not a defense available to a third party (*Johnson v. Kelley*, 112 Neb. 60; *Cobbey v. Knapp*, 23 Neb. 579; 29 C. J. 925) unless the third party has a valid lien upon the homestead, as in *Trevett, Mattis & Baker Co. v. Reagor*, 112 Neb. 470, and *Anderson v. Cusack*, 115 Neb. 643. A trustee in bankruptcy, as we have seen, has no interest in the exempt portion of the homestead; as to it he is not in privity with the mortgagors.

We are of the opinion that the mortgage is a valid lien to the extent of the $2,000 homestead interest on the portions of the lots actually occupied and claimed by the Donnells as their homestead and as heretofore described, and that the district court erred in the decree in refusing to allow the mortgage as a lien and to decree foreclosure to that extent. We cannot close our eyes to this error by assuming that, perchance, the bankruptcy court might find this exemption in favor of the bankrupts and that they in turn may pay it to the mortgagee. The trustee submitted himself to the jurisdiction of this court when he brought this action. The right to the homestead exemption is controlled by the law of domicile. This court has jurisdiction of the parties and of the subject-matter. Equity and the law under our interpretation suggest that this exemption be assigned by decree here to the mortgagee to whom the mortgagors assigned it by their written contract.

For the reasons stated, the judgment of the district court should be affirmed as to all of the property therein described save as to the homestead interest, and as to the homestead interest the decree should find and decree the mortgage to be a lien of $2,000 thereon and direct a foreclosure thereof on failure to pay the same.

AFFIRMED AS MODIFIED.

The following opinion on motion for rehearing was filed October 10, 1930. *Rehearing denied.*

Heard before Goss, C. J., Rose, Dean, Good, Thompson, Eberly and Day, JJ.

Goss, C. J.

The appellants duly filed a motion for rehearing and the court ordered oral argument thereon directed especially to the question of the effect of the giving of the Whitford mortgage within four months of the bankruptcy. Upon consultation, after the argument covering that question and the merits of the case generally, it was assigned to the writer of the former opinion to express the views of the court.

So far as the facts are stated in the opinion they are singularly accurate. But the appellants forcefully and ably present their views that the opinion fails in its statement of the law and of the facts. They argue that, under the facts and the applicable law, there was an oral agreement and intent to give such a written mortgage and therefore an equitable mortgage, in accord with the maxim that equity regards that as done which ought to be done; and that, when this culminated in the written mortgage, it was binding upon the trustee in bankruptcy.

As indicated in the opinion, there was no written agreement whatever between the Donnells and Whitford that a mortgage would be required or given; and the mortgage was executed, delivered and recorded, all within the four months' period before the bankruptcy proceedings against either of the Donnells. These conclusions of fact are fully supported by a careful reexamination of the bill of exceptions. The evidence shows that the certified check of Mr. Whitford for the $22,000 loan was paid by his bank on November 27, 1926, and that the notes of the Donnells for a like total, dated November 8, 1926, were executed and delivered to Mr. Whitford "a few days afterwards" according to his own testimony. About the first of December, 1926, he went to California and remained until June, 1927. The new bank probably began business in December, 1926.

It failed on May 14, 1927, and a telegram to that effect was received at Mr. Whitford's Pasadena home on the same day. On that evening Mrs. Donnell arrived there from Nebraska and learned the fact of the failure. On the trial it was stipulated that the Donnells were insolvent from and after May 14, 1927. Mrs. Donnell returned from California to Kearney with Mr. Whitford, arriving there June 30, 1927. Mr. Whitford then asked Donnell if the mortgage had been made out and was informed that it had not. "He said he would make it but he didn't say just when he would make it; that he would carry out his contract." Mr. Whitford testified there was no correspondence or conversation about the mortgage between June and the time he received the recorded mortgage in November, 1927, and that he never received or demanded the bank stock as collateral.

Do the facts, under the rules in force in this jurisdiction, make out a case where we should say that there was an oral agreement for a mortgage and we should apply the maxim that equity requires to be done that which ought to be done, as demanded by appellants?

Section 2451, Comp. St. 1922, now section 36-103, Comp. St. 1929, reads as follows: "No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same."

As affecting probably the major portion in value of the property involved—that is, the homestead of the Donnells —we are confronted by section 2819, Comp. St. 1922, now section 40-104, Comp. St. 1929: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife."

Only a few of the many cases on various states of fact under this homestead statute need be cited to show that it

means what it says: *Whitlock v. Gosson,* 35 Neb. 829; *Teske v. Dittberner,* 70 Neb. 544; *Solt v. Anderson,* 71 Neb. 826; *Trevett, Mattis & Baker Co. v. Reagor,* 112 Neb. 470. In the last case cited above it was also held that, even though husband and wife failed to assert the invalidity of a prior mortgage on the homestead, yet a subsequent mortgagee holding a valid mortgage on the homestead may take advantage of the invalidity.

As to the effect of the general statute of frauds, section 2451, Comp. St. 1922, heretofore quoted, we have a learned opinion by Judge Frank Irvine, which discusses the principles which we think are involved in the case before us. *Bloomfield State Bank v. Miller,* 55 Neb. 243. There was involved the deposit of title deeds but without any contract in writing; and there the loan had actually been received by the one who deposited the deeds as security. The opinion discusses the meaning of the statutory phrase "by operation of law" and holds that it does not embrace cases where the creation of the estate depends solely on the intention of parties to a contract; holds that a mortgage by the deposit of title deeds, without writing, violates the statute of frauds, is contrary to the policy of the recording acts and is not effective in this state; holds that a court of equity cannot give effect to an oral contract declared void by the statute of frauds under pretense of aiding an imperfect attempt to execute a contract; and, finally, holds that an equity court cannot enforce such a mortgage on the ground that the consideration has been actually paid. It seems to us that the case is so analogous in principle and so alike in general fact that we cannot accede to the position of the appellants in the case at bar without overruling this decision which has stood for a generation as the rule in this jurisdiction. This decision has been cited with approval in other jurisdictions. We content ourselves with citing *Sleeth v. Sampson,* 237 N. Y. 69. The case was in the court of appeals and the opinion was by Judge Cardozo. It was held that advancing money in consideration of an agreement to secure it by mortgage on real property is not suffi-

cient part performance to take it out of the statute of frauds. After citing *Bloomfield State Bank v. Miller,* 55 Neb. 243, the opinion says: "A different holding would open wide the door to the entry of evils against which the statute is directed. Any one who made a loan would be free to transmute it into a loan with a lien upon the land." One who has performed, by payment only, his part of a contract for an interest in land under an oral contract that is contrary to the statute of frauds is ordinarily relegated to his remedy to recover back the money paid. 25 R. C. L. 571, sec. 170.

It will thus be seen that equity could not require the Donnells to make a mortgage to Whitford because they had promised to do so, nor because he had performed his part of the oral agreement and had loaned them the money agreed upon. Nor do we think we should decree that, when they have made a mortgage in pursuance of a previous oral agreement, it shall relate back and take effect as of a date when the agreement was only oral in order to permit the parties to it to evade the preferences denounced by the bankruptcy law. In the circumstances this would be especially abhorrent and would be to sanction a constructive fraud against the creditors of the bankrupts. For we cannot close our eyes to the implication naturally arising from the facts: Whitford and Donnell were both bankers of long experience. Both knew the property mortgaged was all the unincumbered property Donnell had. Both must have known that it would have been harmful to the new bank in Kearney if its customers and creditors knew that Donnell, one of its chief officers, had mortgaged his home. Secret equities between relatives are looked upon with suspicion.

We believe that our former opinion was right and that we went as far as equity and the law demanded when, because all the parties were before us, we permitted the homestead exemption in the statutory amount to be set off to Whitford and considered as if coming under the mortgage. The rehearing should be denied.

REHEARING DENIED.