ZELLA KELLOGG ET AL., APPELLANTS, V. CARRIE E. MC-
DONALD ET AL., APPELLEES.

FILED FEBRUARY 25, 1932. No. 27879.

*M. F. Harrington* and *George M. Harrington,* for appellants.

*Sidney W. Smith* and *C. A. Kingsbury, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PER CURIAM.

This is an action which was brought in the district court for Dixon county to quiet the title in the plaintiffs to 90 acres of land, in the course of which suit a restraining order was entered, restraining the defendant, the Penn Mutual Life Insurance Company, from proceeding to sell at foreclosure sale a quarter-section of land, which included the 90 acres in question, which decree of foreclosure had been entered in the district court of the United States for the district of Nebraska. At the trial of the case, the district court for Dixon county entered a decree finding that the mortgage of the defendant is a first lien on the above described real estate, and is superior to the interests of the plaintiffs therein, and dissolved the temporary injunction, denied the permanent injunction, and dismissed the action to quiet title brought by the plaintiffs.

The evidence is voluminous, but the salient facts may be set out very briefly, as follows: J. J. Kellogg gave a $3,000 mortgage, dated July 5, 1904, upon 160 acres of Dixon county land near Allen, Nebraska, to the Connecticut Mutual Life Insurance Company, and later conveyed 40 acres of said land to his wife. He left nine living children by a first wife and five children by his second wife at the time of his death on January 6, 1918, and a posthumous son, Francis, one of the plaintiffs herein, was born shortly after his death. He died intestate, and the county court decreed that five-twentieths of the land passed to his widow and one-twentieth to each of his 15 children. Mr. Kellogg had at one time owned a section of land, and had deeded one-half of it to his nine older children and had deeded another 160 acres to the four oldest children of the second marriage, for which reason quitclaim deeds were given by the older children, leaving the wife and youngest children to be provided for out of this remaining

160 acres, out of which he had given his wife a deed to one 40 acres, the whole 160 acres being included in the mortgage given to the Connecticut Mutual Life Insurance Company, as above set out. The mortgage being in default, a foreclosure action was brought, and all parties were properly served. The property was bid in for $16,-000 by V. W. McDonald. Upon June 7, 1922, said bidder, with his wife, gave a mortgage for $10,000 to W. S. Gilman, of Sioux City, Iowa, for the purpose of raising money to pay his bid on said land. This mortgage was recorded June 19, 1922, and upon July 6, 1922, the sheriff's deed was issued.

The surplus above the amount due the Connecticut Mutual Life Insurance Company was distributed to the proper heirs, and the mother receipted in full as guardian for the proper amounts due to her minor children.

For the purpose of paying off his mortgage to Gilman, the said McDonald gave a mortgage for $10,000 upon the same 160 acres to Frank H. Binder, dated March 23, 1923, and upon May 10, 1923, Gilman released his first mortgage. Upon May 25, 1923, Binder assigned his mortgage to the Penn Mutual Life Insurance Company, which mortgage being in default, a decree of foreclosure was entered upon March 12, 1927, in the district court of the United States at Omaha, all parties to said title and mortgage being duly served. It is alleged in the answer in this case that each and all of the mortgagees, to wit, W. S. Gilman, Frank H. Binder, and the Penn Mutual Life Insurance Company, were without knowledge of any alleged claim or interest of the plaintiffs in or to said property, nothing appearing of record in reference thereto.

The plaintiffs claim, on the other hand, that V. W. McDonald, who had died prior to the trial, did not purchase said land for $16,000 for and on his own behalf, but that he did so under an arrangement which was reduced by him to a written declaration of trust upon July 31, 1924, setting out that he now held "and will continue to hold the same in trust only for the use and benefit of said minor

heirs," being the plaintiffs in this action, Zella Kellogg and Francis Kellogg, such trust instrument covering 90 acres of the 160 acres in the mortgage given to the Penn Mutual Life Insurance Company. Counsel for appellants say in their brief: "We think it is sufficiently set forth from the very beginning what our contention is. We simply say that these minor children own this 90 acres of land; that the title was fraudulently taken away from them by McDonald; that they were in possession of the land when the Penn Mutual mortgage was taken."

Of course, these small children were not in possession, but the land was worked by several tenants in small tracts, who each rented it of V. W. McDonald, who gave the mortgage which the Penn Mutual Life Insurance Company owns and is foreclosing. These tenants all knew it as the old Kellogg farm or Kellogg estate, and no one of them knew anything in regard to the real and actual title or ownership of the land they farmed.

The broad rule is that possession of real estate is constructive notice to all the world of whatever claim the possessor asserts, whether legal or equitable. 13 L. R. A. n. s. 51. And it cannot be claimed that he is not chargeable with notice of what the actual right and title of the actual possessor was and is. *Essex County Nat. Bank v. Harrison,* 57 N. J. Eq. 91.

On this contention, the evidence of each of the tenants who were farming portions of this land was taken, and if the mortgagees had inquired of each of them who owned the land, not one of them would have given an answer that would have warned the mortgagees that the title and ownership was other than as shown by the abstracts. In *Smoke v. Pope,* 119 Neb. 432, the court say: "Possession of land may be notice to the world of possessory rights of which inquiry of the occupant would elicit knowledge." It is clear that none of the tenants knew, or could have communicated, any information as to the secret declaration of trust. *Engdahl v. Laverty,* 110 Neb. 672; *Dengler v. Fowler,* 94 Neb. 621.

The doctrine that possession is notice of whatever right or title the occupant has is really a rule of equity, and grows out of the equitable doctrine of notice, and whatever is sufficient to put a party upon inquiry is good notice of everything which it is afterwards found that such inquiry, if diligently prosecuted, would have disclosed.

A visible state of things inconsistent with a perfect right in the person who proposes to sell is the foundation of the duty to make inquiry. *Dix v. Wilkinson,* 149 Ga. 103.

It is a settled rule in this state that, if the possession by one of a piece of land is consistent with the record title, the purchaser is not bound to inquire concerning the title indicated by the possession, because no inquiry is suggested by it. *King v. Lane,* 186 S. W. (Tex. Civ. App.) 392; *Hunt v. Ellis,* 27 N. M. 397.

The English rule is that a purchaser of land, neglecting to inquire into the title of the occupier, is not affected by any other equities than those which such occupier may insist on. *Hunt v. Luck,* 1 Ch. Div. 45, 70 L. J. Ch. n. s. 30.

Possession of real estate is notice to an intending purchaser or mortgagee of whatever rights, title or interest the possessor then asserts. This is the holding in *Laughlin v. Gardiner,* 104 Neb. 237; but on rehearing, 104 Neb. 245, this was amplified in these words: "The evidence is undisputed that such an inquiry would have disclosed that they were then merely holding by sufferance, ready to yield possession at any time, and making no claim of any interest in the property. Their possession therefore was not notice of any infirmity in the title."

Nor does the possession of land by a third person put a purchaser "upon inquiry of anything which he would not have learned if he had duly and fully inquired of the person in possession, in regard to the rights he claimed in the premises." *Canfield v. Hard,* 58 Vt. 217. See *Dickey v. Lyon,* 19 Ia. 544; *Walker v. Neil,* 117 Ga. 733.

It is clear from the evidence that the possession of each of the tenants was not different from what it had been before there was any secret trust agreement, and no one of

these tenants had any knowledge thereof which he could have imparted to the mortgagee, which would have given any additional information to what the record title disclosed.

Plaintiffs allege that they were in possession of said premises, and that this was notice to the world of their ownership of said premises. Is not the burden of proof to establish this fact upon the plaintiffs? If the several tenants knew nothing of the ownership of these minor plaintiffs of the land they were farming, have the plaintiffs sustained the allegation?

The Penn Mutual Life Insurance Company is asking that its rights be protected by subrogation to the Gilman mortgage, which is clearly a good mortgage, given as part of the foreclosure proceedings. The plaintiffs seek to have the mortgage canceled as to their land. Can this equitable relief be granted them without their doing equity by paying off a mortgage given under these circumstances? We think not. *Henry v. Henry*, 73 Neb. 746; *Betts v. Sims*, 35 Neb. 840. The facts as proved bring this case clearly within our holdings that conventional subrogation arises where one pays the debt of another under an agreement, express or implied, that the person paying should be subrogated to the liens existing as security for the debt. *Hoagland & Co. v. Decker*, 118 Neb. 194; *Prudential Ins. Co. v. Qualset*, 116 Neb. 706.

The district court was right in refusing to grant a permanent injunction and further delay the sale directed by the federal court, because that is a court of coordinate jurisdiction, which first acquired jurisdiction of the subject-matter, and the judgment of the district court is hereby

AFFIRMED.