PENN MUTUAL LIFE INSURANCE COMPANY, APPELLEE, V. ADAM J. KIMBLE ET AL., APPELLEES: RUDOLPH KRAUSE, APPELLANT.

272 N. W. 231

FILED MARCH 23, 1937.   No. 29820.

*J. H. Barry* and *H. V. Kanouff,* for appellant.

*Good, Good & Kirkpatrick, Mark Simons* and *Sidney W. Smith, contra.*

Heard before ROSE, GOOD, PAINE and CARTER, JJ., and RYAN and KROGER, District Judges.

PAINE, J.

This is a foreclosure action, brought by the Penn Mutual Life Insurance Company, plaintiff and appellee, against the owner of the land, Adam J. Kimble, and his wife, the Fremont Joint Stock Land Bank, second mortgagee, and Rudolph Krause and his wife, who are the tenants in possession. From the decree of foreclosure, the only party filing a motion for a new trial is Rudolph Krause, the tenant, who is the appellant in this court.

The decree of the trial court, entered on November 12, 1935, found that there was due the plaintiff from Adam J. Kimble and his wife the sum of $20,618.07, with interest at 10 per cent. from the date of the decree, upon a mortgage given by them upon 220 acres of land, more or less, in Saunders county, Nebraska, and that this mortgage is a first lien upon said property.

The decree further finds that the Fremont Joint Stock Land Bank is the owner of a note in the original sum of $35,000, dated July 7, 1920, which was secured by a first mortgage upon 5,120 acres of land in Loup county, and by a second mortgage upon the land in Saunders county, upon which note there was a balance due of $9,959.35, with in-

terest at 8 per cent., which is a second lien upon said real estate.

The decree further found that the defendant and appellant, Rudolph Krause, had, by virtue of permanent improvements placed upon the property during his tenancy, a lien upon said property as against the owner, Adam J. Kimble and wife, in the sum of $2,449.88, with interest at 7 per cent. from February 3, 1933, to the date of the decree and 6 per cent. thereafter, and that said lien of the appellant is a third lien against said real estate, to which finding tenant Rudolph Krause and the Fremont Joint Stock Land Bank severally except.

The decree further found that Rudolph Krause, tenant and appellant, was the owner of certain fixtures, consisting of 200 creosoted posts, 90 galvanized posts, 200 rods of woven wire, considerable hog fencing, gates, one garage, one machine shed, one furnace, electric light bulbs, a feed rack, and a garden fence, and that all of said articles were personal property owned by Rudolph Krause, the tenant, as removable fixtures, and that he has the right to remove said articles on or before the date that he abandons possession of said premises. To which findings the first and second lienors severally except, and it is ordered that the property be sold by the sheriff and the proceeds brought into court.

It will be seen from this summary of the decree entered in this case that the questions brought to this court for determination are based entirely upon the separate answer and cross-petition of the defendant and appellant, Rudolph Krause, and the replies thereto.

The allegations in said cross-petition set out that the said Rudolph Krause has been a tenant on and occupied said farm continuously since March 1, 1912, on which day he entered into an oral contract and agreement with the owner, Adam J. Kimble, by which it was agreed that Krause should build, erect, and place on said real estate such improvements, buildings, repairs, and additions as he might deem necessary, and at the termination of his occupancy he

could remove from said real estate all of such improvements which he had placed thereon as could be removed without damage to the freehold, and that as to such buildings, improvements, additions, or repairs as he might be unable to remove, the said owner, Kimble, was to pay Krause the value thereof at the time the same were placed on the real estate, and that the amount so due was to be a first and valid lien upon said real estate; that pursuant to said agreement and contract the said Krause built, erected and constructed a garage, machine shed, chicken house, windmill, bathroom fixtures, pipeless furnace, and a large amount of fencing, all of the value of $2,036.38, and that all of said improvements can be removed from the farm without damage or injury to the freehold, and that none of said improvements are a part of the real estate. That in addition the said Krause constructed a corn-crib and granary, at a cost of $740, put tiling in the basement, constructed a cement floor in a shed, erected a horse barn, constructed a cesspool and cistern, added two porches to the house, a bathroom, cupboards, and sidewalks, all of which cost $2,186.29, none of which improvements can be removed without damage to the premises, and, therefore, the said Krause prays that he be permitted to remove the improvements first set out herein from the real estate, and that he be decreed to have a first lien for the value of the articles which the court finds cannot be removed from the real estate.

To which cross-petition the plaintiff filed an answer, denying that said Krause had any lien superior to the first mortgage of the plaintiff, or that he had any right to remove any of the buildings or improvements on said premises, and alleging that all of such claims are barred by the statute of limitations, and that no notice of any kind was given the plaintiff of any of such claims, and that on March 2, 1923, the owner, Adam J. Kimble, made application to Frank H. Binder for the first mortgage of $15,000, which Binder assigned to the plaintiff, and represented in said application that all of the improvements thereon were

the property of said Adam J. Kimble, and that at the time of said application there was a first mortgage of $10,000 on said property owned by the Bankers Reserve Life Insurance Company of Omaha, Nebraska, which said mortgage was prior and is superior to all claims of said Krause, and plaintiff asked to be subrogated to the rights of the Bankers Reserve Life Insurance Company, as the plaintiff's money paid off said mortgage. That when the application for a loan was made to Frank H. Binder, he caused the premises to be inspected by his associate, R. R. Otis, and that at the time of such inspection Otis talked with Krause, and Krause made no mention of any claim of ownership or lien upon the premises for the value of any of the improvements thereon, and that Krause is now estopped from claiming or asserting any such ownership or lien.

The evidence of said Rudolph Krause was to the effect that he was living on his father's place, and his father-in-law, Adam J. Kimble, asked him to rent the property in suit; that objection was made that there were very few improvements on the place, and the testimony of Mr. Krause of his conversation with Mr. Kimble appears on direct examination in the bill of exceptions as follows: "Q. Did you have a talk with Mr. Kimble about that, and what did he say and what did you say? A. He told me 'Now whatever you put on this place is yours, and whatever you can't move off you'll get paid for it.' Q. When would you get paid for it? A. Whenever this land was sold. Q. Anything said about you moving off? A. No, sir. Well, if I ever had to move off of it, why I would get paid. Q. You were to be paid for it at that time? A. Yes, sir. Q. Did he say anything about what security you would have for the payment of that? A. He said it would be just the same as a mortgage on the farm. Q. And the improvements that you made that could be moved off, what was said about that? A. Well them that I could move off, I could take them. Q. Move them off? A. Yes, sir. Q. Now then did you make some improvements there after you went there, Mr. Krause? A. Yes, sir." The direct examination of Mr.

Kimble sustains the testimony of his son-in-law, Mr. Krause, on these points.

We will first consider the right of the tenant to remove certain fixtures and personal property which he has placed upon this farm, and was given the right to remove before he abandoned possession of the premises.

*Kellogg v. McDonald,* 122 Neb. 613, 240 N. W. 922, holds: "Possession of land by a third person does not put a mortgagee upon inquiry with reference to anything which he would not have learned if he had made inquiry as to the ownership from such occupier."

The English rule is that a purchaser of land, neglecting to inquire into the title of the occupier, is not affected by any other equities than those which such occupier may insist on. *Hunt v. Luck* (1901) 1 Ch. Div. (Eng.) 45, 70 L. J. Ch. n. s. 30; *Daniels v. Davison,* 16 Ves. Jr. *249, 33 Eng. Reprint, 978. Or, to state it another way, the possession of real estate is constructive notice to all the world of whatever claim the possessor asserts, whether legal or equitable.

In *Smoke v. Pope,* 119 Neb. 432, 229 N. W. 330, it is said: "Possession of land may be notice to the world of possessory rights of which inquiry of the occupant would elicit knowledge."

In *Ogden v. Garrison,* 82 Neb. 302, 117 N. W. 714, it is held: "A purchaser is chargeable with notice of a tenant's rights, when the latter is in the actual possession of the real estate at the time it is sold."

In view of these Nebraska decisions, the trial court was right in permitting the tenant to remove such personal property as described in the decree.

Now, the more serious question is presented, i. e., will an oral contract between a tenant and his landlord, made on March 1, 1912, to the effect that the value of permanent improvements which could not be removed should be a lien in the nature of a real estate mortgage, be decreed to be a valid mortgage lien in favor of the tenant, and to which the two other mortgages are junior and inferior?

We have examined all of the cases cited by the appellant, and do not find among them any Nebraska case in which such an oral contract was given the same effect as a written mortgage. Therefore, in so far as the contract with the tenant, Krause, attempted to give him a lien which should have all the effect of a mortgage for the value of permanent improvements which he placed upon the land while in possession of the same as tenant, it violates the Nebraska statute, section 36-103, Comp. St. 1929, and cannot be upheld.

It could well be argued that such a contract, fully performed by the tenant, might be held valid as against his landlord, but as soon as the rights of third parties intervene, their equities are fully protected by the statute of frauds.

This matter is discussed in 25 R. C. L. 570, sec. 168, and we find that such an agreement could only be binding upon the landlord. See *Sleeth v. Sampson,* 237 N. Y. 69, 142 N. E. 355, 30 A. L. R. 1400, an opinion by Judge Cardozo upon this point.

In the case of *Herring v. Whitford,* 119 Neb. 725, 232 N. W. 581, an oral agreement to give a mortgage was held to be ineffective even though the money had been advanced. In considering this case on rehearing, it was said by our court that equity could not require a mortgage to be made because they had promised to do so, nor because one party had performed his part of the oral agreement and had advanced the money, for under the circumstances it would sanction a constructive fraud against creditors. See, also, *Roden v. Williams,* 100 Neb. 46, 158 N. W. 360.

There is a long discussion of this same matter by Commissioner Irvine in *Bloomfield State Bank v. Miller,* 55 Neb. 243, 75 N. W. 569, and it is held: "A court of equity cannot give effect to an oral contract declared void by the statute of frauds, under pretense of aiding an imperfect attempt to execute a contract." It is clearly shown in this case that it is the rule in this state, created by statute, that mortgages should be in writing and duly recorded, and that this law has merit, for secret liens are thereby prevented.

See *Newman v. Newman,* 103 Ohio St. 230, 133 N. E. 70, 18 A. L. R. 1089.

The occupancy by the tenant in the case at bar will hold all of the rights which he has in the property which are not in violation of the statute of frauds, and inquiry from him would have shown that when he leased this farm it was very inadequately provided with buildings, and that he was given the right by the landlord to put in certain fencing, build sheds and other improvements, which were not to become a part of the real estate, and which would remain his property and could be removed by him before he vacated the place. These facts could all have been learned by the plaintiff-mortgagee when its agent was upon the place and investigated the application for a loan, but he failed to make any inquiry whatever from the tenant as to these facts.

It is our opinion that under these circumstances the trial court went as far as the law would allow in protecting the tenant by allowing him to remove certain improvements which he had placed thereon under his oral agreement with the landlord, and, finding no error in the decree of the trial court, the same is hereby

AFFIRMED.