LINNIE CHRISMAN ET AL., APPELLEES, V. CYNTHIA DANIEL: FEDERAL LAND BANK OF OMAHA, APPELLANT.

278 N. W. 565

FILED MARCH 25, 1938. No. 30234.

*William C. Ramsey, Franklin L. Pierce, Philip M. Wellman, William W. Graham, Philip N. Johnston* and *Moyer & Moyer*, for appellant.

*Greenamyre & Nelson, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and FALLOON, District Judge.

ROSE, J.

This is a suit in equity by Linnie Chrisman and H. C Chrisman, plaintiffs, to foreclose a contract in which they agreed to convey to Cynthia Daniel, defendant, the southeast quarter of section 21, township 23 north, range 3, Madison county. As consideration for the conveyance the defendant named obligated herself to pay $500 a year to plaintiffs for life or to either of them after the death of the other. There were defaults in payments for four or five years beginning March 1, 1932. Quieting title in plaintiffs and establishing a first lien on the land for the unpaid debt were other forms of relief sought by plaintiffs. The contract was duly executed and acknowledged November 13, 1926, and recorded November 30, 1926. Pursuant to its terms plaintiffs executed and delivered to Cynthia Daniel, defendant, November 29, 1926, a warranty deed to the land described and the deed was recorded November 30, 1926.

The Federal Land Bank of Omaha, also a defendant, pleaded that it had a 20,000-dollar mortgage, executed by

Cynthia Daniel and her husband, J. Edgar Daniel, May 27, 1927, and recorded May 31, 1927, which created a first lien on the land described in the Chrisman contract; that for defaults in payments due on this mortgage it was foreclosed in a suit to which the Chrismans were duly summoned parties who failed to appear or plead; that their default was entered; that their lien was adjudged to be inferior to that of the mortgage; that the suit on the 20,000-dollar mortgage was commenced and determined before the action at bar was instituted; that there was no appeal from the foreclosure, which was *res judicata* as to priority of the liens. The Federal Land Bank pleaded further that the Travelers Insurance Company had on the land in controversy a 7,000-dollar mortgage dated May 19, 1922, and recorded May 26, 1922, which was a lien antedating the Chrisman contract; that the debt secured by the prior mortgage was paid from proceeds of the subsequent 20,000-dollar mortgage, and that the lien of the 7,000-dollar mortgage was satisfied of record June 4, 1927; that the Federal Land Bank was subrogated to the former rights of the Travelers Insurance Company in its satisfied mortgage.

J. Edgar Daniel died January 5, 1933, and the cause was revived in the name of Cynthia Daniel, administratrix of his estate. Linnie Chrisman died pending litigation and the cause was revived in the name of B. L. James, executor of her will.

Under the pleadings in the present case the real issues were *res judicata* and subrogation. Upon a trial of the cause the district court found the issues in favor of plaintiffs, denied subrogation, and foreclosed the Chrisman contract as the first lien, the unpaid annual instalments and interest amounting to $2,915.40. The Federal Land Bank of Omaha appealed.

The Federal Land Bank takes the position that it was adjudicated in its former suit to foreclose its 20,000-dollar mortgage that the lien thereof was superior to the lien of the contract obligating the Daniels to pay the

Chrismans $500 a year for life, and that the district court in the present case erred in the judgment to the contrary.

The pleadings and the evidence herein show conclusively that the Chrismans, plaintiffs, had a lien on the land described in their contract for the annuities, and that when the contract was recorded it was the first lien as disclosed by the public records with the exception of the 7,000-dollar mortgage. In an argument in support of the proposition that the former judgment foreclosing the bank's mortgage as the first lien is binding on and concludes the Chrismans on that issue, the bank relies on *Cowles v. Kyd,* 91 Neb. 274, 135 N. W. 1010. The report of that case shows that Cowles brought a suit to foreclose a tax sale certificate; that defendant pleaded a former adjudication in a suit to which Cowles was a summoned defendant who made default; that it was alleged in the petition therein Cowles claimed to have some lien on or interest in the premises involved, but the exact nature and extent of which the plaintiff does not know, but which is inferior to plaintiff's lien for taxes; that it was adjudicated in the former action plaintiff had the superior lien and that the defense of *res judicata* was established.

On the other side it is contended that the ruling in the later case of *Burns v. Sholl,* 111 Neb. 628, 197 N. W. 393, controls the case under consideration on the issue of *res judicata.* In the *Burns-Sholl* case it was held that allegations in the petition to the effect defendants claim some interest in the premises subject to foreclosure, the exact nature of which is to plaintiff unknown, but which is junior, inferior and subject to the rights of plaintiff, were mere conclusions wholly insufficient as pleadings to require defendants to appear and disclose their interests and claims, where the essential facts were previously given in detail on public records of which plaintiff was chargeable with notice. The opinion in the later of the two cases cited seems to be based on the sounder reasons and the better authorities. In the earlier case the petition was treated as sufficient without discussion. Besides, the surplus arising

from the sale of the premises was ample for the satisfaction of plaintiff's claim.

The record in the case at bar shows that the Chrisman contract for annuities of $500 a year and the deed in consideration thereof were instruments which appeared on the public records of the county when the bank lent $20,000 to Cynthia Daniel. It was bound at its peril to know the contents of the contract and of the deed, notwithstanding the allegation that it did not know the nature of the interests of the Chrismans in the previously encumbered land. By failure to make vain appearances in the former suit and to interpose unnecessary pleas of facts already communicated to the bank by public records, the Chrismans did not, in equity, lose the priority of their lien over that of the bank. The conclusion on this branch of the controversy is that the former adjudication did not displace the priority of the lien for annuities.

Was the bank subrogated to the rights of the Travelers Insurance Company in the latter's 7,000-dollar mortgage? When that was the first lien, Cynthia Daniel applied to the Federal Land Bank of Omaha for a loan of $20,000 on the same and other land. In the application for the loan it was distinctly stated in writing that the debt secured by the 7,000-dollar mortgage was to be paid with proceeds of the new loan and the lender was directed by the borrower to make the payment. The first mortgage was listed in the application as a lien to be discharged from such proceeds. The land was offered as security for the new loan. Pursuant to this understanding the lending bank paid the debt and interest due on the first mortgage, or $7,455, and discharged the lien of record. There was no fraud in the transactions. Under the circumstances the bank was not a volunteer. Subrogation was implied, if not directly expressed by the parties. Rules of equity, based on reason and authority, have been stated as follows:

"Conventional subrogation arises where one pays the debt of another under an agreement, existing at the time of the payment, with either the debtor or the creditor,

that the person paying shall be subrogated to the liens existing as security for the debt. It differs from legal subrogation which exists only in favor of the surety for the payment of the debt, or one who is compelled to pay the debt to protect his own rights. Conventional subrogation arises by reason of either an express or an implied agreement between the third person paying the debt and either the debtor or creditor." *State v. Holdrege State Bank,* 110 Neb. 814, 195 N. W. 120. Followed in *Hoagland & Co. v. Decker,* 118 Neb. 194, 224 N. W. 14. See, also, *Frederick v. Gehling,* 92 Neb. 204, 137 N. W. 998; *Prudential Ins. Co. v. Qualset,* 116 Neb. 706, 218 N. W. 734; *Kellogg v. McDonald,* 122 Neb. 613, 240 N. W. 922.

With the law of subrogation thus previously determined, the Federal Land Bank acquired the interests of the Travelers Insurance Company in its first mortgage for $7,000.

The judgment is affirmed on the issue of *res judicata* and reversed on the issue of subrogation and the cause remanded to the district court, with directions to correct the error on the record as it stands.

AFFIRMED IN PART AND REVERSED IN PART.